ROBERT O'DONNELL *v.* ARTHUR A. RINDFLEISCH ET AL. (4985)

DUPONT, C. J., BIELUCH and NORCOTT, Js.

Argued October 5, 1987—decision released January 5, 1988

*Peter Schwartz,* for the appellants (defendants).

*Theodore J. Wurz,* with whom, on the brief, was *Maroun G. Zoghbi,* for the appellee (plaintiff).

BIELUCH, J. The plaintiff, Robert O'Donnell, brought this action on August 7, 1983, against the defendants, Arthur A. Rindfleisch and Irene M. Rindfleisch, husband and wife, to collect monies allegedly due him for services rendered and materials furnished pursuant to an executed oral agreement to reshingle the roof of the defendants' house. The defendants have appealed from the judgment rendered for the plaintiff awarding him the amount due pursuant to the parties' agreement, less certain setoffs awarded to the defendants. We find no error.

This case presents a matter of first impression. The dispositive issue on appeal is whether the trial court erred in finding that the plaintiff had not violated either the Home Improvement Act; General Statutes §§ 20-418 through 20-431; or the Connecticut Unfair Trade Practices Act; General Statutes §§ 42-110a through 42-110q (hereinafter CUTPA); by subcontracting the defendants' roofing work to a roofer who was not registered as a home improvement contractor under the Home Improvement Act.[1] We conclude that the Home Improvement Act does not require that subcontractors be registered as home improvement contractors.

The trial court found the following facts. The defendants are the owners of a single-family home in Bristol.

---

[1] General Statutes § 20-427 (b) provides in part: "A violation of any of the provisions of [the Home Improvement Act] shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b [of CUTPA]."

In the spring of 1983, the defendants decided to replace the roof on their house. The defendant, Irene M. Rindfleisch, noticed that a house on their street was having its roof replaced and, upon inquiry, learned that the plaintiff was the contractor. She had also noticed the plaintiff's advertisement in a local newspaper featuring a "special" promotion and found the advertised price attractive in that it was within her financial range.

Mrs. Rindfleisch contacted the plaintiff, described her needs in general terms and asked for a proposal. The plaintiff submitted a written proposal in the form of a contract executed by him. The defendants never executed this document, however, and it was agreed during the course of trial that the litigation would be based on an oral agreement executed by the plaintiff.[2]

At the time that the authorization to proceed with the work was given to the plaintiff, the parties also agreed that the chimney on the defendants' home was to be repointed by a subcontractor engaged by the plaintiff for the price of $175. This amount was added to the agreed upon price of $2360 for the roof work, for a total cost of $2535. The plaintiff hired a subcontractor, Hermel Levesque, to replace the roof on the defendants' home. After the work was completed, the defendants refused to pay the plaintiff. The plaintiff filed a mechanic's lien and commenced this action to recover the amount due.

The defendants denied the debt and alleged two special defenses: (1) that the plaintiff failed to supply the materials agreed upon and that the work was per-

---

[2] The written offer was admitted into evidence at trial for the limited purpose of showing (1) that an offer was made, (2) what the offer was, (3) what was in the mind of the plaintiff at the time the offer was made, and (4) what the defendants had in mind when they authorized the plaintiff to proceed with the work.

formed in a negligent, defective and unworkmanlike manner; and (2) that the agreement was an invalid unwritten home improvement contract in contravention of General Statutes § 20-419 of the Home Improvement Act. In addition, the defendants filed an amended counterclaim seeking compensation and punitive damages as well as reasonable attorney's fees for alleged unfair or deceptive trade practices in violation of General Statutes § 42-110b of CUTPA. The allegations relevant to this appeal are as follows: (1) that in hiring the plaintiff, the defendants relied on him to have the work performed by "competent, licensed workmen and to personally supervise the work"; (2) that the defendants relied on the plaintiff's written representations and advertisements which "represented and advertised that the plaintiff would perform said services himself"; and (3) that the work was done by "an unlicensed roofer without any supervision by the plaintiff, in violation of Section 20-427 of the Connecticut General Statutes."

The court found that, except for noted exceptions, there had been material and substantial performance under the oral agreement between the parties. The court, however, was unpersuaded by the defendants' legal claims. Specifically, the court found that the advertisement in the newspaper, to wit: "Bob O'Donnell sells it, installs it, and guarantees the labor and materials," did not mean, as the defendants had claimed, that the contractor would personally install the roofing material. The court found such an interpretation unreasonable because, if correct, "no contractor could ever expand his business because he would be severely limited by the number of hours he personally could work each day." The court found that the advertisement merely indicated that the plaintiff "sold the roofing material and installed it in the same manner that an appliance store sells appliances and services them as well, even though the servicing is subcontracted, a universal prac-

tice now." As to the advertised guarantees, the court concluded that because the plaintiff "assumed the responsibility for the work, it is immaterial whether he has it done by one of his employees or whether he subcontracts the installation." The court noted that "[t]he contemporary practice is to have most of the work in construction subcontracted."

The court also found that there was no evidence that the defendants relied upon some special skill or expertise of the plaintiff with reference to roof installation "in the manner of a patient picking a surgeon." The defendants, the court held, "did not know O'Donnell, knew nothing of his craftsmanship or the quality of his work other than that [Mrs. Rindfleisch] liked the looks of what she saw on one job she witnessed from the street."

As to the issue of the licensing of the subcontractor, the court found that "[w]hether or not a subcontractor is 'licensed' or not is also of no concern to the owner provided the subcontractor is competent and the question of competency resolves itself to the contractor's responsibility, who in turn has that privity with the owner." The court concluded, therefore, that "the licensing issue, although not definitively resolved by evidence,[3] is irrelevant to the main issue as herein defined." The court rejected the defendants' claim of

---

[3] At trial, there was a dispute as to whether Hermel Levesque was in fact registered to do home improvement work at the time he performed the roofing work in question. Counsel for the defendants was denied an opportunity to produce an absent witness who, as an employee of the department of consumer protection, was allegedly to testify that Levesque was unlicensed. The court, in denying the request, held that this proof was irrelevant because it found Levesque, as a subcontractor, was not a home improvement contractor required to be registered pursuant to the applicable statute. A "motion to reopen trial" was subsequently filed by the defendants to permit the introduction of this testimony. The court denied the motion, citing its previous determination that the absent witness's testimony would be irrelevant.

a CUTPA violation, finding it was "of no merit, and was injected into the case for purposes of collecting attorney fees."

The court found the plaintiff to be entitled to payment for materials furnished and work done in the amount agreed upon, diminished by a setoff of damages to be determined after a separate hearing for "shortcomings" in the plaintiff's performance of his contract. Following this hearing, the court found that the plaintiff was entitled to recover $2360, less a setoff of $1025, for a net award of $1335, for which judgment was rendered.

The defendants claim that the trial court committed reversible error in finding, as a matter of law, that the plaintiff did not commit a per se CUTPA violation by subcontracting the work at issue to a roofer who was not registered to perform such work as required by General Statutes § 20-420 of the Home Improvement Act.[4] There is no statutory, administrative, regulatory or judicial authority making subcontractors subject to the registration and other requirements of the Home Improvement Act. Our conclusion that the plaintiff did not violate CUTPA by hiring an unregistered subcontractor to install the defendants' roof, however, is supported by our analysis and interpretation of the Home Improvement Act and its legislative history, as well as our agreement with the trial court's reasoning.

The defendants argue that it was the intent of the legislature that the registration requirements of the

---

[4] The defendants also claim that the trial court erred in denying their "motion to reopen trial" to permit testimony that Hermel Levesque, the subcontractor who performed the work, was not properly registered. Because of the court's ruling that any evidence as to whether the subcontractor was or was not properly registered was irrelevant, we need not address this duplicitous claim. In addition, we assume, for the sake of legal argument of the issue considered, that the subcontractor was not properly registered.

Home Improvement Act apply to subcontractors. Specifically, the defendants maintain that the definition of "contractor," outlined in § 20-419 (3) of the Act,[5] as well as the definition of "home improvement," contained in § 20-419 (4),[6] leave no doubt but that anyone who undertakes to perform roofing work is a "contractor" within the meaning of the Act and, therefore, required to register pursuant to § 20-420 (a).[7]

"In seeking to discern legislative intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to legislative practice and policy, and to judicial construction. *Texaco Refining & Marketing Co.* v. *Commissioner*, 202 Conn. 583, 589, 522 A.2d 771 (1987); *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 572, 522 A.2d 763 (1987); *Gill* v. *Petrazzuoli Bros., Inc.*, 10 Conn.

---

[5] General Statutes § 20-419 (3) provides: " '[C]ontractor' means any person who owns and operates a home improvement business or who undertakes, offers to undertake or agrees to perform any home improvement. The term 'contractor' does not include a person for whom the total cash price of all of his home improvement contracts with all of his customers does not exceed one thousand dollars during any period of twelve consecutive months."

[6] General Statutes § 20-419 (4) provides in relevant part: " 'Home improvement' includes but is not limited to, the repair, replacement, remodeling, alteration, conversion, modernization, improvement, rehabilitation or addition to any land or building or that portion thereof which is used or designed to be used as a private residence or dwelling place, or the construction, replacement, installation or improvement of driveways, swimming pools, porches, garages, roofs, siding, insulation, solar energy systems, flooring, patios, landscaping, fences, doors and windows and water-proofing in connection with such land or building or that portion thereof which is used or designed to be used as a private residence or dwelling place, in which the total cash price for all work agreed upon between the contractor and owner exceeds two hundred dollars."

[7] General Statutes § 20-420 (a) provides: "No person shall hold himself out to be a contractor or salesman without first obtaining a certificate of registration from the commissioner as provided in this chapter, except that an individual or partner, or officer or director of a corporation registered as a contractor shall not be required to obtain a salesman's certificate."

App. 22, 30, 521 A.2d 212 (1987)." *Petti* v. *Balance Rock Associates,* 12 Conn. App. 353, 359, 530 A.2d 1083 (1987).

Our analysis begins with the relevant language of the Home Improvement Act. Section 20-420 (a) provides that "[n]o person shall hold himself out to be a contractor or salesman without first obtaining a certificate of registration from the commissioner [of consumer protection] as provided in this chapter, except that an individual or partner, or officer or director of a corporation registered as a contractor shall not be required to obtain a salesman's certificate." Section 20-419 (3) defines "[c]ontractor" as "any person who owns and operates a home improvement business or who undertakes, offers to undertake or agrees to perform any home improvement." The definition of "[h]ome improvement," found in § 20-419 (4), "includes but is not limited to . . . replacement . . . of . . . roofs . . . ."

This language, which sets out the registration requirement of the Home Improvement Act and defines to whom the requirement applies, makes no mention of subcontractors. It is, therefore, not apparent on the face of the act whether the legislature intended that *subcontractors* hired by *contractors* in the home improvement industry register themselves as *contractors* with the department of consumer protection under its terms. We point out, however, that the legislature included salesmen in the registration requirement of § 20-420, and excluded individuals, partners, and officers or directors of a registered corporation from having to register as salesmen. It is reasonable to assume that if the legislature had intended to include subcontractors within the registration requirement of the Home Improvement Act, it would have listed them as affected parties in § 20-420.

"If the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intention of the legislature and there is no room for judicial construction. *Mazur* v. *Blum,* 184 Conn. 116, 118–19, 441 A.2d 65 (1981); *Aaron* v. *Conservation Commission,* 183 Conn. 532, 548, 441 A.2d 30 (1981); *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981). 'When legislation contains a specific definition, the courts are bound to accept that definition.' (Citations omitted.) *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236 (1974); *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 347, 170 A.2d 883 (1961)." *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986).

We may also turn to the legislative history regarding the Home Improvement Act to reveal the intent of the legislature regarding the act's scope and purpose, and the policy underlying its passage. "Before the true meaning of a statute can be determined where there is genuine uncertainty concerning its applications, consideration must be given to the problem in society to which the legislature addressed itself." 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 45.02; see *State* v. *Gaines,* 196 Conn. 395, 400, 493 A.2d 209 (1985).

When introducing the proposed Home Improvement Act to the House of Representatives, the bill's sponsor made the following statement: "The purpose of the bill is to provide minimal, and I stress minimal, safeguards for the consumer who contracts for home improvement work to be done on or in the home. Contractors will also benefit from this legislation, as it will regulate the influx of irresponsible and fly-by-night operations, which not only undercut the responsible contractor but also contribute to the industry's negative image

with the public." 22 H.R. Proc., Pt. 33, 1979 Sess., pp. 11613–14, remarks of Representative William P. Candelori. Following these introductory remarks, Representative Candelori outlined the major elements of the legislation. He emphasized that the purpose of registration was primarily one of providing responsibility to the consumer.

The legislative history reveals that at no time was it intended that the registration requirement would serve as the equivalent of a licensing function, that is, to imply that a registered contractor possessed special skills or training. In fact, the contrary was expressed by Representative Candelori in these words: "While a member of the General Law Committee, I proposed the registration of home improvement contractors as an alternative to a piece of proposed legislation that was pending concerning the licensing of home improvement contractors which I felt was too restrictive and certainly too prohibitive." Id., 11635.

The legislative history of the Home Improvement Act reveals that it was the intent of the legislature that this legislation would serve to regulate the home improvement industry by issuing certificates of registration to contractors earning more than $1000 per year who have no past history of fraud or deceit, and thereby protect consumers from any unscrupulous businessmen. Id., 11625. Nowhere in the legislative consideration is there revealed an intent to include subcontractors within the registration requirement. Its aim was targeted only at contractors who deal directly with property owners. That is evident in these words of its proposer, Representative Candelori: "[T]he act requires that every home improvement contract as defined in this piece of legislation be in writing, *contain the entire agreement between the owner and contractor,* and each

party must have a completed copy of contract at the time the contract is executed." (Emphasis added.) Id., 11621.

The contract between the contractor and the subcontractor is not within the purview of the act, and need not be under its purpose and premise, for by its terms the contractor is responsible to the consumer and the commissioner of consumer protection for whatever the subcontractor may do. The level of the act's protection does not reach the contractor in his relationship with a subcontractor. In such a business relationship, the contractor is not a consumer. It is clear from the legislative record that the registered contractor was intended to be the person liable for the actions of persons he hires, employs or engages as a subcontractor to work on a homeowner's improvement project.

In the case before us, the plaintiff, a registered contractor, hired a subcontractor to install the defendants' new roof. The defendants were aware that the plaintiff was registered and, therefore, responsible for the completed project, regardless of the capacity of whoever actually performed the work for him. The intent of the legislature, as well as the public policy reflected in the passage of the Home Improvement Act, protected the defendants in their contract with the plaintiff, and the judgment of the court for the setoff in their favor implemented this protection. We agree with the trial court that requiring subcontractors to register as home improvement contractors would be unreasonable and unduly burdensome in an industry where most, if not all, construction work is often subcontracted for its completion by a general contractor who oversees the entire project and is responsible for the final result. The plaintiff did not violate any of the provisions of the Home Improvement Act by hiring a subcontractor to perform the reroofing work on the defendants' home.

In view of that conclusion, we also hold that the plaintiff did not thereby commit an unfair or deceptive trade practice under § 42-110b (a) as alleged in the defendants' counterclaim. See General Statutes § 20-427 (b).

The defendants' counterclaim of a CUTPA violation was tandem to their alleged violation of the Home Improvement Act by the plaintiff's subcontract for performance of the work by another. Their failure to prove a violation of the Home Improvement Act establishes that the plaintiff also did not violate CUTPA. In view of that conclusion, we need not consider the defendants' claim that the trial court also erred in denying their "motion to reopen trial" to permit testimony to establish that the subcontractor was not registered under the Home Improvement Act. Such evidence would be irrelevant and immaterial to the issues before the trial court.

There is no error.

In this opinion the other judges concurred.