[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue in this proceeding is whether the child, Aracelli G., should be in the temporary custody of her father or her maternal grandmother. Heretofore, custody has been with the commissioner of children and youth services (now the commissioner of children and families) who has placed Aracelli with her maternal grandmother. The father of Aracelli has filed a motion to modify in which he seeks temporary custody. The motion is granted.
 I.
Aracelli, age 4, was born on March 2, 1989. Her parents have not been married to each other. Aracelli has an older sister, Doraluz, born November 4, 1986. Aracelli and Doraluz do not have the same father.
On March 25, 1993, the commissioner of the Department of CT Page 10669 Children and Youth Services filed petitions alleging that Aracelli and Doraluz were being neglected by their mother. On April 22, 1993, the court issued an ex parte order pursuant to General Statutes 46b-129 (b) granting temporary custody to the commissioner. The commissioner, in turn, placed Aracelli with her maternal grandmother. By pleading dated May 17, 1993, the father sought custody of Aracelli.
Despite the title of his motion, his evidence and claims at trial manifest that the father seeks not only temporary but permanent custody of Aracelli. The grandmother seeks to retain temporary custody. As her brief states: "It is pertinent to point out that [the grandmother] is not asking for permanent custody of Aracelli. She is asking for a continuation of temporary custody. . . . Ultimately, it is [the grandmother's] hope that her daughter . . . will rehabilitate herself sufficiently to be considered capable of regaining custody of both her children." Brief of Maternal Grandmother, p. 4. Aracelli's mother supports the grandmother's position; she does not now seek custody. The commissioner opposes the father's motion, although the expert whose testimony the commissioner adduced favors the father as the custodian of Aracelli. The child's attorney opposes the father's motion and seeks to maintain the status quo. No party has requested joint custody with another party.
 II.
The grandmother has made the claim, albeit orally, that this court lacks subject matter jurisdiction to entertain the father's motion.[1] "Jurisdiction involves the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created." (Internal quotation marks omitted.) LoSacco v. Young, 210 Conn. 503, 508 (1989). "The Superior Court lacks jurisdiction only if it has no competence to entertain the action before it." Bridgeport v. Debek, 210 Conn. 175, 180
(1989).
General Statutes 46b-129 (b) provides in part that where, as here, the court has determined that "the child's . . . condition or the circumstance surrounding h[er] care require that h[er] custody be immediately assumed to safeguard h[er] welfare, the court shall" inter alia "vest in some suitable agency or person the child's . . . temporary care and custody pending a hearing upon CT Page 10670 the petition. . . ." That statute does not expressly provide for a modification of an order of temporary custody. However, three canons of statutory construction compel the conclusion that the legislature indeed did confer jurisdiction on the superior court to modify temporary custody in a neglect proceeding prior to an adjudication.
First, "the legislature is presumed to have acted with knowledge of existing statutes and with an intent to create one consistent body of law." Zachs v. Groppo, 207 Conn. 683, 676
(1988); see In re Valerie D., 223 Conn. 492, 524 (1992). General Statutes 46b-121, which coexists in the same chapter of the General Statutes as 46b-129, provides in pertinent part that "[i]n . . . juvenile matters, the superior court shall have authority to make and enforce such orders directed to parents, including any person who acknowledges before said court paternity of a child born out of wedlock, guardians, custodians or other adult persons owing some legal duty to a child . . . as it deems necessary or appropriate to secure the welfare, protection, proper care, and suitable support of a child . . . subject to its jurisdiction or otherwise committed to or in the custody of the commissioner of children and youth services." This legislative grant of authority is broad and general. It includes within its ambit the authority to modify the terms of an order of temporary custody.
Second, courts may refer to the policy underlying a legislative act in order to ascertain its intent. O'Donnell v. Rindfleisch, 13 Conn. App. 194, 202 (1988). The purpose of what now is chapter 815t of the General Statutes, in which General Statutes 46b-121, 46b-129 are codified, "is to provide for the proper care custody, education and rearing of children under the age of sixteen who are dependent, uncared for, neglected . . . or delinquent." Cinque v. Boyd, 99 Conn. 70, 75-76 (1923). More recently the General Assembly has declared that "[t]he public policy of this state is:
 "To protect children whose health and welfare may be adversely affected through injury and neglect; to strengthen the family and to make the home safe for children by enhancing the parental capacity for good child care; to provide a temporary or permanent nurturing and CT Page 10671 safe environment for children when necessary; and for these purposes to require the reporting of suspected child abuse, investigation of such reports by social agency, and provision of services, where needed, to such child and family." General Statutes 17a-101(a). (Emphasis added).
It would subvert these policy interests if the court were unable to modify an order of temporary custody so that a child may reside with one of her parents who can afford that child a "nurturing and safe environment."
Third, it is presumed that the legislature did not intend absurd consequences from its enactment. Knapp v. Inland Wetlands Commission, 7 Conn. App. 283, 286 (1986); see In re Valerie D. supra, 534. Such would be the consequences were a court unable modify a temporary order of custody in a neglect proceeding so that a child could reside with another parent in a "nurturing and safe environment." The court has subject matter jurisdiction to entertain the motion for modification of temporary custody in a pending neglect proceeding.
 III.
"The controlling principle in a[ny] determination respecting custody is that the court shall be guided by the best interests of the child." Presutti v. Presutti, 181 Conn. 622,626 (1980); Simons v. Simons, 172 Conn. 341, 347, (1777). General Statutes 46b-56b, entitled "Presumption re [are] best interest of child to be in custody of parent" provides. "In any dispute as to the custody of a minor child involving a parent and nonparent, there shall be a presumption that it is in the best interests of the child to be in the custody of the parent, which presumption may be rebutted by showing that it would be detrimental to the child to permit the parent to have custody." Whether or not this statute is factored into the analysis here, the ultimate result remains the same. It is in Aracelli's best interest to be in the custody and home of her father. "The presumption, which is one of public policy, places upon the nonparent the burden of proving sufficient facts to put the presumed fact [that is is in the best interest of the child to be in the custody of the parent] into issue. Anderson v. Litchfield, 4 Conn. App. 24, 28, 492 A.2d 210 (1985). The CT Page 10672 presumption does not shift the burden of proof in a custody dispute between a parent and a nonparent, but makes that burden easier to sustain because it gives the parent an initial advantage. Clark, Law of Domestic Relations, p. 591." Evans v. Santoro, 6 Conn. App. 707, 711n. 3 (1986). "`The best interests' standard remains the ultimate basis of a court's custody decision." Busa v. Busa, 24 Conn. App. 426, 429 (1991).
The father has emotionally matured since his relationship with Aracelli's mother. He has married and has two young daughters by that marriage. He supports his family through his full time employment. His wife, who herself is the, product of a union which produced over a dozen other siblings, is desirous of having Aracelli in their family. The wife is a stable, nurturing, albeit young, woman. While given the tumultuous events surrounding Aracelli's infancy, any change in her custody will have some adverse effect on her, it is undisputed that, whether now or later, a change there must be. The grandmother admits she does not envision keeping custody of Aracelli for more than a year or two. It is very unlikely that Aracelli's mother will be able to provide her with a home in the forseeable future which is equal to or superior to that of the father's. Not only is it in Aracelli's best interests that her temporary custody be with her father; the father's home also presents the best long term prospect for Aracelli. The sooner the change in custody is made the better for Aracelli. And the better that change is, the better Aracelli will be.
In contradistinction to the nuclear family which the father offers, the grandmother, who is only fifty-two years of age, is employed during the hours of 3:30 P.M. to 12:30 A.M. on week days. While she sees the children off to school in the morning and prepares their lunches she has arranged for a nineteen year old babysitter to watch them when they return from school. The grandmother deserves the gratitude of all parties for being there for her grandchildren when their mother could not be. However, it is in Aracelli's best interests that she be in her father's custody, that she reside in her father's house and live in her father's custody. Cf. Franklin v. Dunham, 8 Conn. App. 30,510 A.2d 1007 (1986).
The grandmother's home certainly is far superior to the neglectful environment in which Aracelli previously found herself, and the court has not ignored the evidence that Aracelli would like to remain where she is, with her sister and CT Page 10673 her grandmother. In determining the best interests of the child the court must consider the wishes of a mature child. Gallo v. Gallo, 184 Conn. 36, 42, (1981); In re L., 42 Conn. Sup. 562,568 (1993). However, at age 4, Aracelli is not a "mature child" whose wishes can be given significant weight. Faria v. Faria,38 Conn. Sup. 37, 40 (1982).
The parties opposing the father's motion argue (1) that Aracelli's behavior has stabilized greatly while she has been in her grandmother's home, (2) that any change in custody so soon after Aracelli has come into her grandmother's home will be detrimental to her and (3) it would be detrimental to separate Aracelli from her sister. The court has carefully weighed these factors and has entered them into the calculus of considerations from which it has reached its decision. Upon consideration of the whole record, however, it is in Aracelli's best interest that the motion be granted.
It is anticipated by the court that Aracelli will attend a different school, in the district in which her father resides, in January 1994. Aracelli's sister, her grandmother and her mother will be afforded visitation. Counsel are directed to confer as to the terms and extent of such visitation and as to when, during the Christmas vacation, she will be with her grandmother and sister and when she will be with her father and his family. If an agreement cannot be reached, the court will schedule the matter for an expedited disposition upon the filing of appropriate motions.
LEVIN, JUDGE