[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Procedural History
This lawsuit first came to this court by writ, summons and complaint dated November 29, 1990, returnable January 8, 1991 and filed on January 8, 1991 as of record appears. The complaint contained two counts. The first count claimed an oral contract between the plaintiff and defendant whereby the plaintiff claimed to have furnished labor and materials for floor covering and other associated work on the property of the defendant in East Haddam for a sum certain, and the second count claiming the furnishing of labor and materials by the plaintiff on premises of the defendant with the knowledge and consent of the defendant.
The prayer for relief asked for money damages.
The defendant appeared by counsel on January 14, 1991.
Plaintiff's motion for a default for failure to plead dated February 13, 1991 was granted on February 25, 1991.
The defendant filed an answer and special defenses on June 5, 1991 which presumably cured the default. The first special defense claimed a violation of Section 20-418 et seq. of the Connecticut General Statutes, known as the Home Improvement Act. The second special defense claimed accord and satisfaction. The third special defense claimed defective, negligent and unskilled work and performance. A reply to the special defenses was filed by the plaintiff on June 12, 1991, and the pleadings were closed.
The Court Makes the Following Findings of Fact.
The plaintiff David Stanavage, hereafter Stanavage, in CT Page 1331-RRRR 1989 and in years prior thereto, was a contractor in the floor covering trade. The defendant Rodney L. Davis, prior to 1987, was a principal of the corporation Rodney L. Davis Contractor, Inc. but subsequent to 1987, as best the court can determine, was an employee of the corporation. Stanavage and Davis had been involved in a system of bartering of services in 1989 and prior thereto. In 1989, Stanavage performed certain services and supplied certain materials to property owned by Davis and his wife, the property being located on Grove Street in Moodus, which is part of the town of East Haddam. The work Stanavage performed included tile work, tub enclosures, tile kitchen floor, work in 2 or 3 baths, carpeting in living room, bedrooms, back stairs and foyer.
While Stanavage was working on Grove Street, Davis had other artisans there doing work. Davis directed Stanavage in the work Stanavage was to do at Grove Street. After Stanavage performed his services and supplied materials, he rendered a statement to Davis. (See Plaintiff's Exhibits A and B.) The total of exhibits A and B is $6,514.10.
The bartering arrangement between Stanavage and Davis was to the effect that Davis or Rodney Davis Contractor, Inc. was to perform certain work on premises owned by Stanavage located at 33 Laurel Point Drive, Oakdale, which work was estimated at $17,000.00 +/- against which the $6,514.10 would be credited.
After the Laurel Point property had been cleared and a foundation contemplated Davis made a request for funds to pay for the concrete for the foundation. Stanavage was unable to provide any funds, his financing being incomplete with the banks and an argument ensued between Stanavage and Davis who had formerly had a tranquil relationship.
Stanavage caused a mechanics lien to be lodged on the Laurel Point lot.
Prior to the verbal agreement, Davis or his son had done some clearing on the Laurel Point lot, had pulled stumps and buried this debris at certain locations on the lot.
There was a written document entitled "Contract" prepared by Laura B. Davis, secretary of Rodney Davis Contractor, Inc. which described the work to be done on the Laurel Point lot. The contract was signed by Laura B. Davis, secretary, but no CT Page 1331-SSSS one else signed the document. The price for the work recited in this document was $17,700.00. (See Plaintiff's Exhibit D.)
After Stanavage's bank financing was completed, he hired John P. Moore of Ledyard to do the excavation for the planned residence, install a foundation and footings, excavate for a septic system and galleys at a cost of $10,300.00 plus an additional $2,000.00.
Teal Brothers from Salem did the actual pouring of the foundation. Stanavage's claim, according to his testimony is for $6,514.10 less a credit of $1,000.00 he represents he verbally agreed to give Davis.
The work done by Stanavage for Davis was at Davis' home and residence at Grove Street. No written contract was prepared or submitted by Stanavage to Davis for his work.
In 1989, Stanavage did not have a home contractor's license. Stanavage does not have any such license as of this date. The property at 33 Laurel Point Drive, on which a residence was contemplated, is owned by Stanavage.
Laura B. Davis is the wife of Rodney Davis and resides with him at the Grove Street residence where she is a co-owner. Laura and Rodney Davis have been married for thirty-three years.
Davis, during the trial, introduced an invoice (Defendant's Exhibit 1) claiming Stanavage owed Davis $8,000.00 presumably in support of Davis' second special defense of accord and satisfaction there being no counterclaim in this lawsuit. Davis acknowledged that there was no written agreement or contract as concerns the Grove Street work.
Certain defects or cracks occurred in the floor tiles installed by Stanavage. (See Defendant's Exhibits 2 through 8 Photos.)
Davis did not have a contractor's license for home improvements as required by § 20-419(3) of the Connecticut General Statutes claiming exemption under § 20-419(4)(A) "the construction of a new home as concerns the 33 Laurel Point Drive premises."
Dan Zawisza of East Haddam is an excavator and was CT Page 1331-TTTT employed by Rodney Davis Contractor, Inc. to do the excavation on the lot at 33 Laurel Point Drive.
DISCUSSION
This is a claim by the plaintiff Stanavage to be paid for work he did on the home and residence of Davis situated on Grove Street in Moodus.
The work done and materials provided were at a residence. The work done and the materials provided were an improvement to the residence.
Davis asserts in his first special defense that the claim by Stanavage is violative of § 20-418 of the Connecticut General Statutes et seq.
The court feels that § 20-429(a) — § 20-429(f) is controlling. That statute is set forth herein.
 Sec. 20-429. Required contract provisions; enforceability. Negative option provisions prohibited. Owner to receive copy. Contracts considered home solicitation sales, recovery of payment of work performed. (a) No home improvement contract shall be valid or enforceable against an owner unless it: (1) is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor, except that the commissioner may, by regulation, dispense with the necessity for complying with the requirement that each change in a home improvement contract shall be in writing and signed by the owner and contractor.
(b) No home improvement contract shall be valid if CT Page 1331-UUUU it includes any provision obligating the owner to instruct the home improvement contractor, by a date determined by such contractor, that periodic home improvements are not to be performed unless it also includes a provision requiring the contractor to remind the owner of that obligation by means of a card or letter mailed to the owner and postmarked not earlier than twenty days, and not later than ten days, prior to such date.
 (c) The contractor shall provide and deliver to the owner, without charge, a completed copy of the home improvement contract at the time such contract is executed.
 (d) The commissioner may, by regulation, require the inclusion of additional contractual provisions.
 (e) Each home improvement contract entered into shall be considered a home solicitation sale pursuant to chapter 740 and shall be subject to the requirements of said chapter regardless of the location of the transaction or of the signing of the contract.
 (f) Nothing in this section shall preclude a contractor who has complied with subdivision (1), (2), (6), (7) and (8) of subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner, provided the court determines that it would be inequitable to deny such recovery.
There was no writing covering the work on the Moodus residence, therefore, the owner and contractor had nothing they could sign.
Any agreement was oral, informal and on the basis of bartering. There could be no names or addresses because there was no document. No document being available, no cancellation rights could be spelled out, nor could any starting or completion dates appear and neither party was registered.
Even the provisions of § 20-429(f) cannot help the CT Page 1331-VVVV plaintiff Stanavage.
The provisions of the statute § 20-429(a) through § 20-429(f) are dispositive of issue in this suit. See also § 20-419(a) of the Connecticut General Statutes for definition of "home improvement." See Caulkins v. Petrillo, 200 Conn. 713
(1986) requirements of the act are mandatory not permissive. See also Barrett Builders v. Miller, 215 Conn. 316 (1990); ASecondino and Son, Inc. v. LaRicco, 215 Conn. 336 (1990); TheLiljedhal Bros., Inc. v. Grigsby, 215 Conn. 345 (1990); and,Syndey v. DeVries, 215 Conn. 350 (1990). Oral contracts for home improvements are unenforceable and home improvement I contractors are not entitled to restitution under the noncontractual common law theories of quasi contract, quantum meruit and unjust enrichment.
The plaintiff urges upon the court the proposition that the Home Improvement Act does not apply to his claim because
 a. the work being done on Davis' premises was of a mixed office and residential nature and the work was being done in the main by the owner and, therefore, exempt under § 20-419(4)(E); and,
 b. the act does not apply to this situation because the plaintiff was a subcontractor to the defendant.
The plaintiff relies on O'Donnell v. Rindflusch, 13 Conn.
App. 194, 204 (1988), which states in part:
 "[A] contract between the contractor and the subcontractor is not within the purview of the Act, and need not be under its purpose and premise, for by its terms the contractor is responsible to the consumer and the commissioner of consumer protection for whatever the subcontractor may do. The level of the act's protection does not reach the contract in his relationship with the subcontractor. In such a business relationship, the contractor is not a customer. It is clear from the legislative record that the registered contractor was intended to be the person liable for the actions of persons he hires, employs or engages CT Page 1331-WWWW as a subcontractor to work on a homeowner's improvement project."
The weakness in the plaintiff's claims in this respect are that the work done was strictly residential involving living areas, bedrooms, baths, foyer, etc; the work wa [was] being done for the defendant as a homeowner and not in the capacity of a contractor.
The relationship between the parties cannot fairly be characterized as contractor and subcontractor.
Mindful that the relationship between the plaintiff and defendant had been amicable until the demand for funds for the concrete for the foundation, the court proceeds on the premise that there was no conscious course of conduct on the defendants part to intentionally mislead or deceive the plaintiff. Quite simply, the provisions of the act should have been complied with.
The plaintiff and defendant engaged in their bartering conduct at their peril so to speak, mindful of the requirements of the statute.
The court need not address the other special defenses. Judgment may enter in favor of the defendant Davis.
Austin, J.