[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED FEBRUARY 26, 1997
This case involves the applicability of the Home Improvement Act (HIA), General Statutes § 20-418 et seq., to a cause of action by a painting subcontractor seeking to recover from a homeowner for services rendered and materials furnished. The premises in question are owned by the defendants. Harrison Scott Higgins and Linda Plank Higgins, and are located on Huntzinger Drive in Greenwich.[1] The plaintiff, Michael Meadows, d/b/a Paper Pro, alleges in his complaint that he entered into an oral contract with Bruce Simon d/b/a Construction Management, as "agent and/or general contractor" for the Higginses, to furnish painting and wallpapering at the Higgins' home for approximately CT Page 694-M $29,000; that he last performed services on January 15, 1993; that he filed a mechanic's lien on April 6, 1993; and that the Higginses paid him approximately $12,000, leaving a balance due of approximately $17,000. The plaintiff seeks to foreclose a mechanic's lien that he filed against the subject premises, as well as damages. interest and attorneys' fees.
The defendants, in their answer, deny the material allegations of the complaint and assert special defenses and a two-count counterclaim.[2] The defendants contend in their special defenses that the certificate of mechanic's lien was not filed in a timely manner; that the plaintiff was an unregistered home improvement contractor; that there was no written contract between themselves and the plaintiff; and that the plaintiff had failed to advise them of their cancellation rights.
In the first count of their counterclaim, the defendants allege that the plaintiff performed his painting and wallpapering in an unworkmanlike and unsatisfactory manner in a number of specific ways, which required them to engage other painters to remedy the defective work. In the second count, the defendants contend that the plaintiff's conduct constitutes an "Unfair Trade Practice."
This case was referred to Attorney Michael T. Bologna, an CT Page 694-N attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 428 et seq. The referee conducted a trial and then submitted a report finding the following facts: (1) the plaintiff was "hired" by Simon; (2) Simon accepted the plaintiff's bid, told the plaintiff when to start work, scheduled the plaintiff's work, supervised his work, decided whether the plaintiff's services were satisfactory, and communicated to the plaintiff any criticisms of his work received from the defendants;[3] (3) the plaintiff and Simon did not have a written contract but the plaintiff did provide a written estimate of the project cost, which was not signed by Simon; (4) the plaintiff performed his work in a generally satisfactory manner and had completed approximately 90% to 95% of his work when ordered off the job by the defendants; (5) the reasonable value of the plaintiff's services was $29,255, the defendants had paid $12,840 directly to the plaintiff, and there was a balance due of $16,415; (6) the plaintiff last performed work on the subject premises on January 15, 1993 and the mechanic's lien was served and filed on April 6, 1993; (7) the plaintiff did not have a license to act as a home improvement contractor as required by General Statutes § 20-418 et seq., nor did he have a written contract with the defendants that complied with the HIA; (8) the contract between the defendants and Bruce Simon's company, BCS Construction, Inc., described Simon as a "consultant" in connection with a proposed addition to the subject premises;[4]
CT Page 694-O (9) although the defendants did not have a contract with the plaintiff, the agreement and understanding of both parties and Simon was that the defendants would pay the plaintiff directly, not through Simon, which they did in the amount of $12,840; and (10) the plaintiff had incurred legal costs of $5,757.50 in connection with the foreclosure of his mechanic's lien as of February, 1996.
The attorney trial referee, on the basis of the above findings of fact, concluded the following: (1) the mechanic's lien was filed in a timely fashion; (2) the plaintiff was a home improvement contractor under General Statutes § 20-419 (3) and the work he performed at the defendants' premises constituted a home improvement as described in General Statutes § 20-419
(4); (3) although both Simon and the defendants denied that Simon was their general contractor, he "served many of the functions normally performed by a general contractor"; (4) the HIA did not apply to this transaction because the plaintiff had a contract with Simon, and Simon had a separate contract with the defendant homeowners, hence there was no "agreement between a contractor [the plaintiff] and an owner [the defendants]"; General Statutes § 20-419 (5); (5) since there was no violation of the HIA, CUTPA did not apply; and (6) the defendants did not prove the allegations of their counterclaim that the work performed by the plaintiff was unsatisfactory and unworkmanlike. CT Page 694-P
The defendants, pursuant to Practice Book § 438, moved to correct the referee's report. The defendants sought the addition of the following corrections to the report: (1) the contract between Simon and the defendants described the former as a "consultant" only, not a general contractor, and that Simon did not have authority to sign contracts for the defendants or approve change orders; (2) the plaintiff was not "hired" by Simon, but rather he was "invited" by Simon to perform work on the defendants' premises; and (3) the plaintiff did not submit change orders to Simon.
In response to the motion to correct filed by the defendants, the attorney trial referee declined to change his recommendation that judgment enter on the complaint for the plaintiff in the amount of $16,415 and in favor of the plaintiff in regard to the defendants' counterclaim. The referee did, however, delete the word "hired" and substituted a finding that the plaintiff was contacted by Simon, that the plaintiff made a proposal to Simon regarding painting the defendants' home, that Simon brought the plaintiff to the job site and told him when to start work and advised the plaintiff that the defendants would pay him directly, as they did, and that change orders were approved by both Simon and the defendants. The referee reiterated his prior conclusion that the HIA did not apply because Simon, although not CT Page 694-Q denominated a general contractor as such, performed essentially all the functions of a general contractor, and that the plaintiff was in effect a subcontractor whose contract was with Simon, not the defendant homeowners.
The defendants then filed exceptions to the referee's report pursuant to Practice Book § 439. The exceptions filed by the defendants contain the same claims asserted in their motion to correct regarding the referee's conclusion about the roles played in this transaction, i.e., whether Simon served as a general contractor, and the plaintiff was a subcontractor outside the scope of the HIA, or whether the plaintiff had a direct contract with the defendants, which fell within the scope of the HIA. The defendants also contend that the plaintiff is liable to them for his allegedly faulty work and that the referee should not have awarded attorneys fees to the plaintiff.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court recently reiterated in Elgar v. Elgar, 238 Conn. 839,848-49, 679 A.2d 937 (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. CT Page 694-R See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See also Romano v. Derby, 42 Conn. App. 624, 626,681 A.2d 387 (1996) ("The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee").
Thus, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id.
The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id.; see alsoRomano v. Derby, supra, 42 Conn. App. 628.
Regarding the first task of determining whether there is support in the record for the factual findings of the referee, the file discloses that although the defendants filed exceptions CT Page 694-S to the referee's report pursuant to Practice Book § 439, they did not file a transcript of the trial with the exceptions as required by Practice Book § 439. Thus, it is impossible for the court to ascertain whether there is support in the record for the referee's findings of fact. When a trial transcript is not furnished to the court, it can be assumed that such a transcript is not "crucial" to the evaluation of the referee's report.Beizer v. Goepfert, 28 Conn. App. 693, 706-07, 613 A.2d 1336, cert. denied, 224 Conn. 901 615 A.2d 1049 (1992), cert. denied,113 S.Ct. 1416, 122 L.Ed.2d 786 (1993). "[F]iling exceptions seeking corrections by the court preserves the excepting party's rights in this regard . . . A party's failure to conform to this procedure limits the reviewing court to determining whether the subordinate facts found by the attorney referee were sufficient to support the referee's ultimate factual conclusions." BlessingsCorporation v. Carolton Chronic Convalescent Hospital, Inc.,7 Conn. App. 364, 367, 508 A.2d 829 (1986). It follows therefore that the factual findings by the referee must stand uncorrected. Practice Book § 439.
Furthermore, the defendants did not file objections to the referee's report as authorized by Practice Book § 440. This means that they have waived any right to claim that the referee's conclusions were not properly reached on the basis of the subordinate facts that were found or that there were errors in CT Page 694-T the rulings on the admission of evidence or in other rulings.Rostenberg-Doern Co. v. Weiner, 17 Conn. App. 294, 301-02,552 A.2d 827 (1989). In Rostenberg-Doern, where a party did not file objections to the referee's report, the court said that the failure to "follow the appropriate procedural guidelines" caused the court to be "precluded from reviewing [the plaintiff's] claim." Id., 302.
Since the referee's findings of fact must stand unchallenged because of the absence of valid and proper exceptions, the remaining issue concerns whether the referee's conclusions follow legally and logically from the underlying facts. This determination is required because a reviewing court is obliged to consider whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. Morningside Gardens,Co., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied,217 Conn. 811, 587 A.2d 153 (1991). See also Practice Book § 443 "[t]he court shall render such judgment as the law requires upon the facts in the report . . ."
The referee determined that the HIA was not applicable to a subcontractor, relying on O'Donnell v. Rindfleich,13 Conn. App. 194, 535 A.2d 824, cert. denied, 207 Conn. 805, 540 A.2d 373
(1988). The issue in the O'Donnell case, however, was whether a general contractor, who was suing a homeowner, had to have shown CT Page 694-U that his subcontractors were also licensed home improvement contractors under General Statutes § 20-420. "We conclude that the Home Improvement Act does not require that subcontractors be registered as home improvement contractors."Id., 195. The O'Donnell court also pointed out that "[t]here is no statutory, administrative, regulatory or judicial authority making subcontractors subject to the registration and other requirements of the Home Improvement Act." Id., 199. The holding of O'Donnell may have been somewhat restricted by Avon Plumbing Heating Co. v. Fey, 40 Conn. App. 351, 358 n. 10, 670 A.2d 1318
(1996), which refers to "a licensed contractor [who] is responsible for any poor performance done by an unlicensed worker." In any event, the plaintiff in this present case, who claims he is a subcontractor, is suing the homeowners directly. Therefore, the issue is whether O'Donnell is also applicable to the facts in this case, regardless of the restriction implied in the Avon footnote.
As indicated previously, the facts found by the referee must stand unchallenged, including the finding that Simon performed the functions of a general contractor. It follows legally and logically that if Simon was a general contractor, then the plaintiff was a subcontractor who did not have a direct contract with the defendant homeowners. The defendants point to the fact that they paid the plaintiff directly and did not pay Simon, the CT Page 694-V putative general contractor. This was clearly the arrangement made between the plaintiff, Simon and the defendants, and does not alter the relationship of subcontractor, general contractor and homeowners, as determined by the referee.
The only reference to this issue in prior caselaw is a 1990 Superior Court case, Cavanaugh v. Tripodi, Superior Court, judicial district of Waterbury, Docket No. 093348 (October 3. 1990, Byrne, J.), which also involved a suit by a subcontractor against a homeowner. "In order for the Home Improvement Act to apply, there must be a contract between the parties. Obviously in this particular situation, there was no contract of any type between the parties [subcontractor and homeowner] and therefore, the Home Improvement Act does not apply." The court agrees with this reasoning and therefore, based on the standard of review inElgar v. Elgar, supra, 238 Conn. 848, the court finds that the referee's recommendations are not illegal or illogical. To the contrary, in the words of Practice Book § 440, his recommendations were "properly reached on the basis of the subordinate facts found." No material error in the referee's report has been found, nor has any other sufficient reason for rendering the report unacceptable. See Practice Book § 443.
Accordingly, as to the plaintiff's complaint, judgment is entered in favor of the plaintiff to foreclose his mechanic's CT Page 694-W lien and the amount of the debt due the plaintiff at this time is established at $16,415. As to the defendants' counterclaim, judgment is entered in favor of the plaintiff. This case should now be claimed for the foreclosure motion or short calendar to rule on the specifics of such foreclosure, including the amount of the debt with interest, type and date of foreclosure, value of the premises, etc.[5] Costs shall be taxed by the clerk.
LEWIS, J.