MICHAEL MEADOWS *v.* HARRISON
SCOTT HIGGINS ET AL.
(AC 17533)

Foti, Schaller and Dupont, Js.

---

[6] See Regs., Conn. State Agencies § 31-301-8; *Fair* v. *People's Savings Bank*, supra, 207 Conn. 539–41.

Argued April 27—officially released June 30, 1998

*Williams A. Phillips*, for the appellants (named defendant et al.).

*Jerome A. Mayer*, with whom, on the brief, was *Peter S. Olson*, for the appellee (plaintiff).

*Opinion*

FOTI, J. The defendants, Harrison Higgins and Linda Higgins,[1] appeal from the judgment of the trial court rendered in favor of the plaintiff, Michael Meadows, doing business as Paper Pro, as to the complaint and as to the defendants' counterclaim. On appeal, the

---

[1] The plaintiff's complaint dated December 15, 1993, also names Darien Design & Construction, Inc., Site Design Associates and MacMillan & Associates as defendants. Those parties are not involved in this appeal. We refer in this opinion to Harrison Higgins and Linda Higgins as the defendants.

defendants claim that the trial court improperly (1) determined that the Home Improvement Act, General Statutes § 20-418 et seq., does not apply to the transaction between the plaintiff and the defendants and (2) awarded attorney's fees to the plaintiff pursuant to General Statutes § 52-249, which provides for such fees in foreclosure actions. We agree with the first of the defendants' claims and, therefore, reverse the judgment of the trial court.

An attorney trial referee found the following facts. The defendants are the owners of a parcel of residential property located in the town of Greenwich. Sometime prior to November, 1992, the defendants entered into a written contract with BCS Construction, Inc. (BCS), pursuant to which BCS agreed to serve as a consultant to the defendants on a project to renovate the defendants' single-family home. In accordance with that contract, Bruce Simon, a principal of BCS and a registered home improvement contractor, was designated the construction manager for the project. Simon subsequently arranged to have the plaintiff provide painting and wallpapering services to the defendants. There was no document or writing setting forth the terms of the agreement pursuant to which the plaintiff provided services and materials to the defendants. On January 15, 1993, the plaintiff had completed approximately 90 to 95 percent of the painting and wallpapering work when he was directed by the defendants to stop all work and leave the premises. The reasonable value of the services and materials provided by the plaintiff to the defendants is $29,255. The defendants have paid the plaintiff $12,840.

On April 6, 1993, the plaintiff filed a certificate of mechanic's lien with the Greenwich town clerk, claiming a lien on the defendants' property in the amount of $16,415. On January 3, 1994, the plaintiff filed a one count complaint seeking, inter alia, foreclosure of the mechanic's lien, damages and attorney's fees pursuant

to § 52-249. On October 25, 1994, the defendants filed an answer, five special defenses and a two count counterclaim. The special defenses to the foreclosure action were that (1) the mechanic's lien was invalid because it allegedly was not filed within ninety days of the last date of any work performed by the plaintiff,[2] (2) the plaintiff is a contractor within the meaning of the Home Improvement Act, who performed work on the defendants' home without having obtained a certificate of registration, (3) the plaintiff failed to advise the defendants of their cancellation rights, (4) any contract pursuant to which the plaintiff provided materials and services to the defendants was not entered into by a registered salesman or registered contractor and (5) there was no written contract signed by the plaintiff and the defendants. In the first count of their counterclaim, the defendants sought damages for the plaintiff's allegedly unsatisfactory, defective and negligent work. In the second count of their counterclaim, the defendants alleged that the plaintiff's actions constitute an unfair or deceptive trade practice in violation of the Connecticut Unfair Trade Practices Act (CUTPA),[3] and sought, inter alia, compensatory and punitive damages, attorney's fees and interest.

The case was tried to an attorney trial referee, who concluded that the mechanic's lien was timely filed and that the provisions of the Home Improvement Act do not apply to the transaction between the plaintiff and the defendants. He also concluded that the defendants failed to meet their burden of proof on the allegations of unsatisfactory work performance and that the CUTPA violations alleged in the defendants' counterclaim were based on the Home Improvement Act, which does not apply to this case. The attorney trial referee recommended that the court render judgment in favor of the

[2] See General Statutes § 49-34.
[3] See General Statutes § 42-110a et seq.

plaintiff as to the complaint, with reasonable attorney's fees pursuant to § 52-249, and as to both counts of the defendants' counterclaim.

On February 26, 1997, the trial court, *Lewis, J.*, rendered judgment in accordance with the attorney trial referee's report. The trial court found that the provisions of the Home Improvement Act do not apply to the transaction between the plaintiff and the defendants because the plaintiff was acting as a subcontractor to Simon, who was a general contractor and, therefore, there was no contract between the plaintiff and the defendants. The trial court concluded that "as to the plaintiff's complaint, judgment is entered in favor of the plaintiff to foreclose his mechanic's lien and the amount of the debt due the plaintiff at this time is established at $16,415. As to the defendants' counterclaim, judgment is entered in favor of the plaintiff. This case should now be claimed for the foreclosure motion or short calendar to rule on the specifics of such foreclosure, including the amount of the debt with interest, the type and date of foreclosure, the value of the premises, etc."

On March 17, 1997, the defendants appealed from the judgment of the trial court. On June 25, 1997, this court dismissed the defendants' appeal for lack of a final judgment. On August 11, 1997, the trial court, *Mintz, J.*, held a hearing on the plaintiff's motion for judgment of strict foreclosure. The trial court rendered judgment of strict foreclosure in favor of the plaintiff and set a law day of September 9, 1997. The trial court also determined the amount of the debt, $16,415, the appraisal fee, $450, and the title search fee, $150, and awarded the plaintiff attorney's fees of $8295. On August 19, 1997, the defendants filed this appeal.[4]

---

[4] Although the defendants appealed from the August 11, 1997 judgment of strict foreclosure, that judgment refers to the trial court's February 26, 1997 memorandum of decision, rendering judgment for the plaintiff on the

The defendants claim that the trial court improperly determined that the Home Improvement Act does not apply to the transaction between the plaintiff and the defendants. We agree.

"We begin by setting forth the applicable standards of review. Attorney trial referees are empowered to hear and decide issues of fact. *Spears* v. *Kerars Realty Co.*, 171 Conn. 699, 702–703, 372 A.2d 121 (1976). It is axiomatic that 'a reviewing authority may not substitute its findings for those of the trier of the facts.' *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.*, 20 Conn. App. 420, 423, 567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318 (1990). The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee. *Dills* v. *Enfield*, 210 Conn. 705, 713, 557 A.2d 517 (1989)." *Romano* v. *Derby*, 42 Conn. App. 624, 626, 681 A.2d 387 (1996). "Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the [attorney trial] referee. See *Bowman* v. *1477 Central Avenue Apartments, Inc.*, 203 Conn. 246, 256, 524 A.2d 610 (1987)." (Internal quotation marks omitted.) *Kallas* v. *Harnen*, 48 Conn. App. 253, 257, 709 A.2d 586, cert. denied, 244 Conn. 935, 717 A.2d 232 (1998).

"The question of whether a particular statute . . . applies to a given state of facts is a question of statutory interpretation . . . . *Plastic Distributors, Inc.* v. *Burns*, 5 Conn. App. 219, 225, 497 A.2d 1005 (1985). Statutory interpretation presents a question of law for the court. *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 6, 434 A.2d 293 (1980); *Pascale*

defendants' counterclaim that alleged a violation of CUTPA. Therefore, we consider the defendants' appeal to include both the judgment of strict foreclosure and the judgment in favor of the plaintiff as to the defendants' counterclaim alleging a violation of CUTPA.

v. *Board of Zoning Appeals*, 150 Conn. 113, 116, 186 A.2d 377 (1962)." (Internal quotation marks omitted.) *Rivera* v. *Fox*, 20 Conn. App. 619, 621, 569 A.2d 1137, cert. denied, 215 Conn. 808, 576 A.2d 538 (1990).

General Statutes § 20-427 (b) provides that "[n]o person shall . . . (5) offer to make or make any home improvement without having a current certificate of registration under this chapter . . . ." Persons found to be in violation of the foregoing provision are subject to both criminal and civil penalties.[5] In addition, General Statutes § 20-429 (a) provides that "[n]o home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights . . . (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ." "A violation of any of the provisions of [the Home Improvement Act] shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b." General Statutes § 20-427 (c).

The trial court accepted the attorney trial referee's finding that at the time the plaintiff provided services and materials to the defendants, he was not a registered home improvement contractor and did not have a written contract with the defendants that complied with the Home Improvement Act. Nevertheless, the trial court concluded, on the basis of the facts found by the referee, that the act did not apply to the transaction between the plaintiff and the defendants, as a matter of law, because the plaintiff was acting as a subcontractor to Simon, who was a general contractor and, therefore,

---

[5] See General Statutes § 20-427 (c) and (d).

there was no "home improvement contract" between the plaintiff and the defendants as that term is defined by the act.

In *O'Donnell* v. *Rindfleisch*, 13 Conn. App. 194, 195, 535 A.2d 824, cert. denied, 207 Conn. 805, 540 A.2d 373 (1988), we considered whether the plaintiff, a registered contractor, had violated either the Home Improvement Act or CUTPA by subcontracting the defendant home-owners' roofing work to a roofer who was not registered as a home improvement contractor under the Home Improvement Act. We held that the Home Improvement Act does not require that subcontractors be registered as home improvement contractors. Id., 204. In *O'Donnell*, we examined the legislative history of the Home Improvement Act and stated that "[n]owhere in the legislative consideration is there revealed an intent to include subcontractors within the registration requirement. Its aim was targeted only at contractors who deal directly with property owners. . . .

"The contract between the contractor and the sub-contractor is not within the purview of the act, and need not be under its purpose and premise, for by its terms the contractor is responsible to the consumer and the commissioner of consumer protection for whatever the subcontractor may do." Id., 203–204.

Although we agree with the trial court that the provisions of the Home Improvement Act do not apply to subcontractors, we do not agree that the trial court's conclusion that Simon was a general contractor and the plaintiff was acting as a subcontractor to Simon legally and logically follows from the facts found by the attorney trial referee.

In its memorandum of decision, the trial court stated that "the facts found by the referee must stand unchallenged, including the finding that Simon performed the functions of a general contractor. It follows legally and

logically that if Simon was a general contractor, then the plaintiff was a subcontractor . . . ." The attorney trial referee did not find as a fact that Simon served as a general contractor for the renovation work performed on the defendants' home. Rather, in the section of his corrected report titled "Legal Discussion," the referee concluded that because Simon performed many of the duties of a general contractor, he was a general contractor and, therefore, the provisions of the Home Improvement Act do not apply to the transaction between the plaintiff and the defendants. "Any legal conclusions reached by an attorney trial referee have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." (Citation omitted; internal quotation marks omitted.) *State Bank of Westchester* v. *New Dimension Homes of Connecticut, Inc.*, 38 Conn. App. 491, 497, 661 A.2d 119 (1995), quoting *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 510, 508 A.2d 415 (1986); see also *Amica Mutual Ins. Co.* v. *Woods*, 48 Conn. App. 690, 692–93 n.4, 711 A.2d 1208, cert. denied, 245 Conn. 916, 719 A.2d 900 (1998).

The following facts regarding the status of the plaintiff, the defendants and Simon, were found by the attorney trial referee. The defendants and BCS entered into a written agreement pursuant to which BCS agreed to act as consultant to the defendants on a project to renovate their single-family home.[6] The agreement provides that BCS has no "authority to sign contracts, change orders or necessary documents unless . . . the owner in writing requests [BCS] to sign in owners' interest. [BCS] will not be responsible or liable for any financial obligations of the owner when signing as consultant

---

[6] This agreement is contained on a standard form prepared by the American Institute of Architects, titled, "Owner-Construction Manager Agreement."

to the owners." In accordance with the agreement, Simon was designated as construction manager for the project. Simon contacted the plaintiff to provide services to the defendants. As a result of proposals made by the plaintiff and conveyed to the defendants by Simon, and pursuant to subsequent discussions between the plaintiff and the defendants and between the plaintiff and Simon, the plaintiff provided painting and wallpapering services to the defendants. The plaintiff did not enter into a written contract with the defendants. It was understood, however, by the plaintiff, the defendants and Simon, that the defendants would pay the plaintiff for his materials and labor. The plaintiff did not enter into a contract with Simon to provide materials and labor to the defendants. Simon supervised the plaintiff's work at the defendants' home. The plaintiff discussed changes in the nature of his work and received instructions and approval from both Simon and the defendants. The defendants made payments directly to the plaintiff in the amount of $12,840.

We conclude that the trial court improperly determined that the facts found legally and logically lead to the conclusion that the plaintiff was a subcontractor to Simon, who served as a general contractor for the renovation work performed on the defendants' home. The record reveals that Simon never entered into a contract with the defendants to perform renovations to their home, but instead served as a construction manager for a firm that had agreed to provide consulting services to the defendants. Therefore, Simon was not obligated to perform any renovation work for the defendants that could have been the subject of a subcontract with the plaintiff. In addition, Simon was not paid by the defendants for work performed by the plaintiff. Finally, all of the parties understood that the defendants would pay the plaintiff for his materials and labor, and

the defendants did in fact make payments directly to the plaintiff in the amount of $12,840.

Our determination that Simon did not serve as a general contractor for the renovation work performed on the defendants' home leads us to conclude that the provisions of the Home Improvement Act apply to the transaction between the plaintiff and the defendants. Since the trial court accepted the attorney trial referee's finding that the plaintiff is not a registered home improvement contractor and does not have a written contract with the defendants, it follows that the plaintiff violated the Home Improvement Act and is not entitled to enforce the provisions of any oral agreement with the defendants. See *Caulkins* v. *Petrillo*, 200 Conn. 713, 719–20, 513 A.2d 43 (1986) (oral home improvement contract fully performed by contractor and partially performed by homeowner barred by provisions of § 20-429). Accordingly, the plaintiff was not entitled to foreclose on his mechanic's lien.[7]

In addition, the plaintiff's failure to comply with the Home Improvement Act "is a per se violation of CUTPA by virtue of . . . § 20-427 [c], which provides that any violation of the Home Improvement Act is deemed to be an unfair or deceptive trade practice." *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 343, 576 A.2d 464 (1990). Having mistakenly determined that the defendants had not established a violation of CUTPA because the Home Improvement Act does not apply to the transaction between the plaintiff and the defendants, the trial court never had the occasion to exercise its discretion with regard to the defendants' alleged entitlement to damages or attorney's fees. A remand, therefore, is necessary to allow the trial court the opportunity properly to exercise its discretion regarding the award of damages and attorney's fees.

---

[7] Our determination that the plaintiff was not entitled to foreclose on his mechanic's lien makes it unnecessary to consider the second claim raised by the defendants on appeal.

The judgment is reversed with respect to the complaint and the second count of the defendants' counterclaim alleging a violation of CUTPA,[8] and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

---

[8] The first count of the defendants' counterclaim is not involved in this appeal.