CENTRAL ILLINOIS ELECTRICAL SERVICES, L.L.C., Plaintiff and Counterdefendant and Appellee, v. HARVEY A. SLEPIAN *et al.*, Defendants and Counterplaintiffs and Appellants.

Third District    No. 3—04—0548

Opinion filed June 23, 2005.—Rehearing denied August 4, 2005.

BARRY, J., concurring in part and dissenting in part.

Robert M. Riffle (argued) and Janaki Nair, both of Elias, Meginnes, Riffle & Seghetti, P.C., of Peoria, for appellants.

Jeffrey E. Krumpe (argued), of Miller, Hall & Triggs, of Peoria, for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

The plaintiff, Central Illinois Electrical Services (CIES), filed a complaint to foreclose a mechanic's lien against the defendants, Harvey and Rosalee Slepian, alleging the Slepians had failed to pay to CIES $14,000 for labor and materials CIES provided the Slepians under an oral contract for electrical work on their property. CIES later added counts for recovery based on unjust enrichment and *quantum meruit*. The Slepians alleged in affirmative defense that because CIES violated the Home Repair and Remodeling Act (the Act) (815 ILCS 513/1 *et seq.* (West 2002)), the oral contract for services was void and, therefore, could not form the basis of recovery under a mechanic's lien. The Slepians filed their own complaint alleging breach of the Act, violation of the Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2002)), violations of the Home Repair Fraud Act (815 ILCS 515/1 *et seq.* (West 2002)), and unjust enrichment. They later amended their complaint to include claims for breach of contract. The Slepians sought relief from the mechanic's lien, return of the money they had paid to CIES or, in the alternative, relief from any further payment to CIES. The trial court found in favor of CIES with respect to the mechanic's lien, dismissed CIES's additional counts as moot, and either dismissed or, following a bench trial, denied all of the Slepians' counts. The Slepians appeal the trial court's rulings and CIES cross-appeals, alleging the trial court erred in failing to award CIES attorney fees. We affirm in part, reverse in part and remand for further proceedings.

## FACTS

CIES recorded a mechanic's lien against the Slepians' property in the amount of $14,000. CIES alleged the Slepians refused to pay for labor and materials CIES provided the Slepians under an oral contract for electrical work on their property. CIES filed a complaint to foreclose the lien and later added counts for recovery based on unjust enrichment and *quantum meruit*. The Slepians alleged in affirmative defense that because CIES violated the Act (815 ILCS 513/1 *et seq.* (West 2002)), the oral contract for services was void and therefore could not form the basis of recovery under a mechanic's lien. The Slepians filed their own complaint alleging breach of the Act, violation of the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2002)),

violations of the Home Repair Fraud Act (815 ILCS 515/1 *et seq.* (West 2002)), and unjust enrichment. They later amended their complaint to include claims for breach of contract. Several of the Slepians' counts were dismissed prior to a bench trial.

The record of the proceedings reveals the following. In the year 2000, the Slepians embarked on a home remodeling project. Over a two-year period they spent approximately $1 million in renovation costs. From October 2000 to June 25, 2002, CIES provided services in the form of electrical work to the Slepians. CIES was the second electrical contractor to perform electrical services on the project. The first electrical contractor billed the Slepians in excess of $15,000. Over the course of a 19-month period, CIES billed the Slepians a total of $57,375 for electrical work. The Slepians received and paid the invoices on a monthly basis. The Slepians refused to pay the final invoice of $14,000. There was testimony at trial indicating the Slepians did not provide CIES with any particular plans, job specifications, or architectural drawings for the renovation project. There was also testimony that Rosalee Slepian required numerous changes in the scope and detail of the electrical work and that electrical projects had to be redone at her behest. Other testimony was offered to indicate that CIES's charges for the electrical work were excessive. It is undisputed that before beginning work for the Slepians, CIES did not provide a written estimate of the proposed work.

The trial court found in favor of CIES with respect to the mechanic's lien, dismissed CIES's additional counts as moot and denied all of the Slepians' counts. The Slepians appeal the trial court's ruling and CIES cross-appeals, arguing the trial court erred in failing to award attorney fees to CIES.

## ANALYSIS

The Slepians' first argument on appeal is that the trial court erred in finding CIES entitled to a mechanic's lien. The Slepians assert that because CIES violated the Act, CIES does not have a valid contract upon which to base a mechanic's lien.

■ Section 15 of the Act states, in part:

"Prior to initiating home repair or remodeling work for over $1,000, a person engaged in the business of home repair or remodeling shall furnish to the customer for signature a written contract or work order that states the total cost, including parts and materials listed with reasonable particularity and any charge for an estimate." 815 ILCS 513/15 (West 2002).

Section 30 of the Act states, in part:

"It is unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs or charge for

remodeling or repair work before obtaining a signed contract or work order over $1,000." 815 ILCS 513/30 (West 2002). The Act also expresses the policy statement that "in order to safeguard the life, health, property, and public welfare of its citizens, the business of home repair and remodeling is a matter affecting the public interest." 815 ILCS 513/5 (West 2002).

Principles of statutory construction dictate that the language of a statute be given its plain and ordinary meaning. *First Bank & Trust Co. of O'Fallon v. King*, 311 Ill. App. 3d 1053, 1058-59, 726 N.E.2d 621, 625 (2000). When the language of the statute is clear and unambiguous, the court should not add exceptions, limitations, or conditions that the legislature did not express. *First Bank*, 311 Ill. App. 3d at 1059, 726 N.E.2d at 625. A court should interpret a statute as a whole so that no term is rendered superfluous or meaningless. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270, 695 N.E.2d 481, 485 (1998). The standard of review for statutory construction is *de novo*. *Swavely v. Freeway Ford Truck Sales, Inc.*, 298 Ill. App. 3d 969, 976, 700 N.E.2d 181, 187 (1998).

■ In the present case it is undisputed there was no written estimate provided by CIES to the Slepians. CIES does not dispute that when CIES began work for the Slepians, the anticipated costs were over $1,000. CIES asserts that because another electrical contractor preceeded CIES on the project, CIES did not "initiate" the remodeling work. CIES further argues it was impossible to provide an estimate of the total costs because the Slepians were constantly changing the scope and therefore the cost of the project.

CIES's interpretation of the "initiation" clause of the Act is strained and does not comport with a plain reading of the statute. Section 15 plainly contemplates that any person engaged in the business of home remodeling or repair, when beginning work on a project that will exceed $1,000 in cost, must provide to the customer a written work order of reasonable particularity. To interpret the statute otherwise would allow any remodeler following an original remodeler to circumvent or render meaningless the public policy objective of the statute. Furthermore, there is no exception under the Act for projects billed on a time and material basis, or projects that become unpredictable in scope and nature. To the contrary, the Act appears designed to help define some reasonable boundaries for a home improvement project. The Act requires an estimate of "reasonable particularity." Nothing in the Act precludes a contractor from providing an updated estimate or work order as the circumstances may warrant. In any case, this court cannot add exceptions, limitations, or conditions to the statute that the legislature did not express.

The language of the Act clearly and unambiguously requires anyone engaged in the business of home repair and remodeling to obtain a signed contract before initiating work that will exceed $1,000 in cost. The trial court erred in concluding the Act did not apply in the instant case, and the court should now hear any claims that were dismissed on that basis. Thus, to the extent that the trial court's rulings relied upon a finding that the Act was not applicable, this cause is reversed and remanded for proceedings consistent with this opinion.

■ The Slepians also argue the trial court erred in dismissing the counts of their complaint that were based on the Consumer Fraud Act. 815 ILCS 505/1 *et seq.* (West 2002). In their complaint, the Slepians alleged that they were lay consumers of CIES's services and did not know that they were being grossly overcharged by CIES. Not every error committed by the trial court in a civil case leads to reversal. *In re Marriage of Wilder*, 122 Ill. App. 3d 338, 344-45, 461 N.E.2d 447, 451 (1983). If the outcome of the case would not have been different, a judgment or decree will not be disturbed. *Lawson v. G.D. Searle & Co.*, 64 Ill. 2d 543, 559, 356 N.E.2d 779, 787 (1976). The burden is on the party seeking reversal to establish prejudice. *Goldstein v. Scott*, 108 Ill. App. 3d 867, 879, 439 N.E.2d 1039, 1047 (1982). Further, this court may affirm the trial court's judgment, regardless of the trial court's reasoning, on any basis in the record. *Kulikowski v. Larson*, 305 Ill. App. 3d 110, 116, 710 N.E.2d 1275, 1280 (1999). Although the Slepians alleged they were grossly overcharged for CIES's services, the trial court, in the best position to evaluate the evidence, concluded the CIES charges, in light of the circumstances of the project, were not unreasonable. The trial judge, as the trier of fact, is in a superior position to observe the demeanor of the witnesses, judge their credibility, and determine the weight their testimony should receive. *Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc.*, 342 Ill. App. 3d 150, 161, 794 N.E.2d 829, 838 (2003). The outcome of the proceedings would not have been different had the Slepians been allowed to proceed on their Consumer Fraud Act counts. Any error on the part of the trial court in denying these claims was harmless; therefore, the court's ruling on this issue is affirmed.

■ Finally, CIES has filed a cross-appeal alleging the trial court erred in failing to award attorney fees to CIES. A trial court's decision whether to award attorney fees is a matter within its discretion and will not be disturbed absent an abuse of that discretion. *Johns v. Klecan*, 198 Ill. App. 3d 1013, 1018-19, 556 N.E.2d 689, 692-93 (1990). Under the Illinois Mechanics Lien Act (the Lien Act), "[i]f the court specifically finds that the owner who contracted to have the improvements made failed to pay any lien claimant the full contract price *** without just cause or right, the court may tax that owner *** the

reasonable attorney's fees of the lien claimant who had perfected and proven his or her claim." 770 ILCS 60/17(b) (West 2002). "Without just cause or right" is defined in the Lien Act as "a claim asserted by a lien claimant or a defense asserted by the owner who contracted to have the improvements made, which is not well grounded in fact and warranted by existing law." 770 ILCS 60/17(d) (West 2002). In the present case, despite having ruled in favor of CIES with respect to the mechanic's lien, the trial court nevertheless found CIES had not proven it was entitled to attorney fees. This is a matter within the sound discretion of the trial court, and we find no reason to disturb the court's finding.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

HOLDRIDGE, J., concurs.

JUSTICE BARRY, concurring in part, dissenting in part, states:

I respectfully disagree with the majority's holding that the trial court erred in concluding the Act did not apply to the instant case. The majority states "there is no exception under the Act for projects billed on a time and material basis, or projects that become unpredictable in scope and nature. To the contrary, the Act appears designed to help define some reasonable boundaries for a home improvement project. The Act requires an estimate of 'reasonable particularity.' " 358 Ill. App. 3d at 549. By all accounts, the Slepian remodeling project was not one which *became* unpredictable in scope and nature. Rather, it was unpredictable in scope and nature from the outset, and therefore, it would have been impossible for CIES to provide a written estimate of the "total cost, including parts and materials listed with reasonable particularity" as required by section 15 (815 ILCS 513/15 (West 2002)).

At the beginning of the job, no particular plans or specifications had been provided by the Slepians. The owner of CIES and the electricians who worked in the home testified that at the beginning of the job, there was no way to know what the scope was going to be because Mrs. Slepian did not outline the details regarding the work she wanted done. She never provided an overview of the project, but, rather, she directed the electricians day by day, room by room, and fixture by fixture. No testimony was ever offered by the Slepians that they did in fact define the scope of the project at the outset so as to make an

estimate of the total cost possible. The record reflects that Mrs. Slepian never expressed exactly what the project would entail at the beginning of the relationship. In fact, it is clear that she was not certain what she wanted CIES to accomplish because she changed her mind on a daily basis regarding the locations of fixtures, the switching, and the general layout, causing the CIES electricians to redo the same rooms multiple times. At one point, one of the electricians, who was an acquaintance of the Slepians, approached Mr. Slepian and told him that his wife was "racking one massive bill here" to which Mr. Slepian responded "don't worry about it. She's having the time of her life." Cost was never mentioned at the outset of the relationship.

The majority opines that the Act required CIES to obtain a signed contract from the Slepians because the anticipated costs were over $1,000. It notes that the estimate must be of reasonable particularity but suggests that a contractor could provide an updated estimate as circumstances warrant. However, under the circumstances, any contract CIES could have drafted at the beginning of this relationship would have been meaningless from the start since a master electrical plan did not even exist. The majority states that the language of the Act is unambiguous, but this interpretation is overly simplistic.

The Act was drafted to protect consumers from home repair fraud. In fact, the Act directs contractors to provide customers with a pamphlet entitled "Home Repair: Know Your Consumer Rights" and sets out the exact language to be included in the pamphlet as follows:

" 'AVOIDING HOME REPAIR FRAUD
Please use extreme caution when confronted with the following warning signs of a potential scam:

(1) Door-to-door salespersons with no local connections who offer to do home repair work for substantially less than the market price.

(2) Solicitations for repair work from a company that lists only a telephone number or a post-office box number to contact, particularly if it is an out-of-state company.

(3) Contractors who fail to provide customers references when requested.

(4) Persons offering to inspect your home for free. Do not admit anyone into your home unless he or she can present authentic identification establishing his or her business status. When in doubt, do not hesitate to call the worker's employer to verify his or her identity.

(5) Contractors demanding cash payment for a job or who ask you to make a check payable to a person other than the owner or company name.

(6) Offers from a contractor to drive you to the bank to withdraw funds to pay for the work.

## CONTRACTS

(1) Get all estimates in writing.

(2) Do not be induced into signing a contract by high-pressure sales tactics.

(3) Never sign a contract with blank spaces or one you do not fully understand. If you are taking out a loan to finance the work, do not sign the contract before your lender approves the loan.

(4) Remember, you have 3 business days from the time you sign your contract to cancel any contract if the sale is made at your home. The contractor cannot deprive you of this right by initiating work, selling your contract to a lender, or any other tactic.

(5) If the contractor does business under a name other than the contractor's real name, the business must either be incorporated or registered under the Assumed Business Name Act. Check with the Secretary of State to see if the business is incorporated or with the county clerk to see if the business has registered under the Assumed Business Name Act.

(6) Homeowners should check with local and county units of government to determine if permits or inspections are required.

(7) Determine whether the contractor will guarantee his or her work and products.

(8) Determine whether the contractor has the proper insurance.

(9) Do not sign a certificate of completion or make final payment until the work is done to your satisfaction.

(10) Remember, homeowners should know who provides supplies and labor for any work performed on your home. Suppliers and subcontractors have a right to file a lien against your property if the general contractor fails to pay them. To protect your property, request lien waivers from the general contractor.

## BASIC TERMS TO BE INCLUDED IN A CONTRACT

(1) Contractor's full name, address, and telephone number. Illinois law requires that persons selling home repair and improvement services provide their customers with notice of any change to their business name or address that comes about prior to the agreed dates for beginning or completing the work.

(2) A description of the work to be performed.

(3) Starting and estimated completion dates.

(4) Total cost of work to be performed.

(5) Schedule and method of payment, including down payment, subsequent payments, and final payment.

(6) A provision stating the grounds for termination of the contract by either party. However, the homeowner must pay the

contractor for work completed. If the contractor fails to commence or complete work within the contracted time period, the homeowner may cancel and may be entitled to a refund of any down payment or other payments made towards the work, upon written demand by certified mail.

Homeowners should obtain a copy of the signed contract and keep it in a safe place for reference as needed.' " 815 ILCS 513/20 (West 2002).

After reviewing this language, it is clear that the Slepians do not fall into the class of consumers the legislature was seeking to protect and CIES does not fall into the category of contractors from whom the legislature was seeking to protect consumers. CIES did not employ door-to-door salesmen using high-pressure tactics. One of its electricians knew the Slepians socially and Mrs. Slepian asked him if he could come and take a look at the house because they had recently fired their general contractor and the electrician who had started the job went with him. The Slepians were not naive or inexperienced consumers in danger of being defrauded by CIES. In fact, CIES worked in the Slepians home for well over a year with the Slepians paying their monthly invoices in a timely fashion with no complaints as to the cost or the workmanship. For the Slepians to now complain that they were somehow disadvantaged by CIES's failure to draft a contract at the beginning of the relationship is simply disingenuous.

Moreover, CIES would have been unable to draft a contract including the essential terms as set out by the pamphlet, because the Slepians never provided a specific or even a broad scope of the remodeling project. CIES would have been unable to describe the work to be performed with any specificity. The company could have provided a start date but the completion date would have been open-ended. Most importantly, CIES had no way of estimating the total cost of the project because the amount of labor and the cost of materials was unknown. For these reasons, the trial judge was correct in his determination that no specific estimate was possible and I would affirm his finding in favor of CIES regarding the mechanic's lien. Therefore, I dissent from the majority's opinion on this issue.

I concur with the majority's opinion affirming the trial court's rulings on the remaining issues.