No. 2--05--0079

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT No. 502, COUNTY OF DU PAGE, | ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 04--CH--349 |
| THE DEPARTMENT OF PROFESSIONAL REGULATION, n/k/a The Department of Financial and Professional Regulation, and FERNANDO E. GRILLO, Director of the Department of Professional Regulation, n/k/a The Department of Financial and Professional Regulation, | ) ) ) ) ) ) ) | |
| Regulation, | ) ) | Honorable Edward R. Duncan, Jr., |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE CALLUM delivered the opinion of the court:

## I. INTRODUCTION

Plaintiff, the Board of Trustees of Community College District No. 502, County of Du Page, commenced this action seeking a declaration that the College of Du Page (College) is a "political subdivision" subject to the Local Government Professional Services Selection Act (Local Government Selection Act) (50 ILCS 510/0.01 et seq. (West 2004)), which does not expressly prohibit political subdivisions from issuing initial requests for proposals that

ask interested architects, engineers, and land surveyors for information about their fees. Defendants, the Department of Professional Regulation, n/k/a the Department of Financial and Professional Regulation (Department), and Department Director Fernando Grillo, moved to dismiss on the grounds that (1) regardless of whether the College is a "political subdivision" under the Local Government Selection Act or a "state agency" subject to the Architectural, Engineering, and Land Surveying Qualifications Based Selection Act (Qualifications Based Selection Act) (30 ILCS 535/1 et seq. (West 2004)), it may not request fee information in its initial request for proposals; and (2) there was no standing or an actual controversy. The trial court accepted both grounds and dismissed the complaint.

We hold that (1) the complaint sufficiently alleges standing and an actual controversy; (2) the College is a "political subdivision" and therefore subject to the Local Government Selection Act; and (3) the Local Government Selection Act does not prohibit the College from soliciting fee or cost information before selecting the most qualified firm for negotiation. Accordingly, we reverse and remand.

## II. BACKGROUND

Filed on March 3, 2004, plaintiff's complaint alleged the following. On November 5, 2002, the College received the authority via a public referendum to issue $183 million in construction bonds. The College began the process of engaging design professionals to assist in various construction projects to be completed over the next several years. In 2003, the College published requests for proposals for architectural, design management, and construction management services.

In a section entitled "format of proposals," the requests instructed that the proposals "[s]tate the price to the College on a fixed fee, not-to-exceed basis for each Phase of the

project. Also, provide a cost breakdown of each element of each phase of the project." Another request for proposals stated that the "[f]ee proposal shall be a lump sum fixed fee for complete A/E services." It required a fixed-fee proposal, a breakdown of the fee by phase, an hourly rate for all personnel categories, and an estimation and breakdown of reimbursable expenses. The request instructed that the fee proposal should be submitted along with the other requested materials. In a separate section entitled "selection criteria," the requests for proposals listed the following criteria: the firm's overall professional qualifications; relevant experience in designing similar educational or other institutional facilities; knowledge of and experience with code requirements for educational facilities in Illinois; performance record on public contracts; resources appropriate for the scope of work and the project schedule; proposed staffing plan and team organization; commitment to the College's schedule; financial responsibility; quality of work as demonstrated by recent construction documents; understanding of specific issues; and design approach to the project.

On May 6, 2003, the College received a letter from Eileen McGuiness, one of the Department's attorneys, stating:

"I am in receipt of a Request for Proposal issued by [the College] ***. I am requesting that you review *** the Local [Government] Professional Services Selection Act ***.

The selection process for Architects and Professional Engineers, Structural Engineers, and/or Land Surveyors differs from the bid process for construction companies. The Department enforces against its licensees violations of the [Local Government Selection Act]. The legislature has clearly articulated its intent to

supplant competition for local units of government *** in regard to the services of Architects, Engineers and land surveyors. *** We would prefer to not have any violation to prosecute against an Architect or Professional Design Firm. I am seeking your assistance toward this end."

On June 18, 2003, the College received a letter from the executive vice-president of the Illinois Council of the American Institute of Architects. The letter expressed concern about the College's request for fee information and asserted that, under the Local Government Selection Act:

"Qualifications, not fees, are to be used as the determining factor in the initial selection process. The purpose of the [Local Government Selection Act] is to protect the owner and public interest by ensuring the selection of a firm qualified to do the work, as opposed to merely a low bidder.

* * *

A fee should not be requested to be included in the proposal, even as only one of many proposal requirements. Once a fee is included, there is a strong tendency for this fee to have undue and often decisive weight in the selection decision."

On February 13, 2004, McGuiness sent the College a letter requesting a list of the architectural or engineering firms to which the College had sent requests for proposals regarding a certain project. On February 19, 2004, the Department issued the College a subpoena duces tecum seeking proposals that architectural and engineering firms had submitted to the College for six planned projects. On February 29, 2004, McGuiness sent to Burnidge & Cassell Associates, an architectural firm, a letter stating, "if you submit

price/fees as part of a submission in response to a Request for Qualifications (or sometimes mistitled Request for Proposal) you can expect to be prosecuted."

The complaint alleged that qualified and interested architectural and engineering firms have declined to submit, have threatened to withdraw, or have withdrawn their proposals because of the Department's threats to prosecute. Plaintiff requested the trial court to (1) declare that the Local Government Selection Act does not prohibit schools and units of local government from soliciting fee information in initial requests for proposals; (2) enjoin the Department from threatening schools and units of local government with subpoenas and freedom of information requests directed at responses to requests for proposals; (3) enjoin the Department from threatening design professionals with prosecution or disciplinary action for responding to solicitations that request fee proposals; and (4) quash the subpoena the Department issued against the College.

With its complaint, plaintiff filed an emergency motion for a temporary restraining order and to quash the Department's subpoena. On March 4, 2004, the trial court entered an agreed order stating that the College is not required to respond to the Department's subpoena and that the Department will not threaten prosecution against any architect, engineer, or land surveyor who includes fee information in his or her response to a request for proposals. On March 12, 2004, the Department issued an order quashing the subpoena issued against the College and sent a letter to plaintiff's counsel, stating its intention not to litigate the matter any further and that it would not issue any new subpoenas in connection with the six planned projects. Because the Department had quashed the subpoena, the trial court denied plaintiff's emergency motion for a temporary restraining order.

Defendants moved to dismiss the complaint, originally pursuant to sections 2--615 and 2--619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2--615, 2--619(a)(9) (West 2004)). Defendants then filed an amended motion to dismiss citing only section 2--615. The amended motion argued that (1) there was no constitutional basis for the complaint; (2) the Qualifications Based Selection Act and the Local Government Selection Act authorized the Department to conduct the activities of which plaintiff complained; (3) the claim was not ripe and did not allege any actual injury; and (4) the complaint asserted claims on behalf of unnamed parties. In response to the motion, plaintiff filed an amendment to the complaint, listing 14 additional planned projects for which the College will require architectural, engineering, and land surveying services.

The trial court found that the Qualifications Based Selection Act applied to the College and precluded the College from requesting fee information in its initial request for proposals and that there was no viable controversy. Plaintiff timely appealed. The Illinois Council of the American Institute of Architects, the American Council of Engineering Companies of Illinois, the Illinois Society of Professional Engineers, the Illinois Professional Land Surveyors Association, and the Structural Engineers Association of Illinois have jointly submitted an amicus curiae brief.

### III. DISCUSSION

#### A. Standard of Review

Plaintiff appeals from the dismissal of its complaint. Defendants' original motion to dismiss cited both sections 2--615 and 2--619 of the Code, while the amended motion mentioned only section 2--615. Defendants' claim that there is no actual controversy relies on matters outside the complaint and therefore should have been brought pursuant to

section 2--619. However, the mislabeling of the motion does not require a reversal. In its brief, plaintiff acknowledges the mislabeling and does not claim any prejudice as a result. See Advocate Health & Hospitals Corp. v. Bank One, N.A., 348 Ill. App. 3d 755, 758 (2004). Accordingly, we will treat the motion as a combined motion brought under both sections 2--615 and 2--619. See 735 ILCS 5/2--619.1 (West 2004).

A section 2--615 motion to dismiss challenges the legal sufficiency of the complaint by alleging defects on its face. Suburban 1, Inc. v. GHS Mortgage, LLC., 358 Ill. App. 3d 769, 772 (2005). When reviewing a section 2--615 motion to dismiss, a court must accept as true all well-pleaded facts and interpret the allegations in the light most favorable to the plaintiff. Young v. Bryco Arms, 213 Ill. 2d 433, 441 (2004). A court should grant a section 2--615 motion to dismiss only if it is apparent that the plaintiff cannot prove any set of facts that will entitle it to recover. Paul H. Schwendener, Inc. v. Jupiter Electric Co., 358 Ill. App. 3d 65, 71 (2005).

A motion to dismiss under section 2--619(a)(9) admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions and that act to defeat the plaintiff's claim. McElmeel v. Village of Hoffman Estates, 359 Ill. App. 3d 824, 826-27 (2005). In ruling on a section 2--619 motion, a court must accept as true all well-pleaded facts (Hermitage Corp. v. Contractors Adjustment Co., 166 Ill. 2d 72, 85 (1995)), and must view the pleadings and supporting evidence in the light most favorable to the plaintiff (Borowiec v. Gateway 2000, Inc., 209 Ill. 2d 376, 383 (2004)). The question is whether the existence of a genuine issue of material fact precludes a dismissal or, absent such an issue of fact, whether a dismissal is proper as a matter of law. Northern Trust Co. v. County of

Lake, 353 Ill. App. 3d 268, 276 (2004). We review de novo a dismissal under either section. Floyd v. Rockford Park District, 355 Ill. App. 3d 695, 699 (2005).

B. Standing/Actual Controversy

Defendants' argument that there is no actual controversy has two bases. The first aspect of the argument is that, because the Department withdrew the subpoena it issued to plaintiff in connection with the 6 existing projects, and the 14 projects named in the amendment to the complaint are merely prospective, there is no immediate controversy. The second aspect of the argument is that, because the Department regulates design professionals, plaintiff does not have standing to complain about any action the Department takes in connection with its oversight of those professionals' activities.

The doctrine of standing is designed to insure that the courts are accessible to parties to resolve actual controversies between them and not to address abstract questions, moot issues, or cases brought on behalf of others who may not desire judicial aid. Burton v. Ramos, 341 Ill. App. 3d 122, 127 (2003). A party establishes standing by demonstrating an injury to a legally cognizable interest. Village of Chatham v. County of Sangamon, 216 Ill. 2d 402, 419 (2005). In the context of a declaratory judgment action, there must be an actual controversy between adverse parties, with the party requesting the declaration possessing some personal claim, status, or right that is capable of being affected by the grant of such relief. Village of Chatham, 216 Ill. 2d at 420.

We conclude that plaintiff has standing to pursue its claim. If plaintiff is correct that the College has the right to solicit fee information in its initial requests for proposals, then the Department has taken direct action that has interfered with that right. Although the Department has withdrawn its subpoena, the fact remains that the Department has targeted

design professionals who have responded to plaintiff's requests and has issued them letters threatening prosecution. Although the Department has stated that it will no longer threaten to prosecute design professionals who provide the requested fee information, the complaint essentially alleges that the earlier threats have had a chilling effect. Thus, the threats have directly interfered with plaintiff's ability to obtain the desired information. There is an actual dispute here that can be resolved by the grant or denial of the relief plaintiff seeks.

### C. The College's Right to Solicit Fee information

Defendants argue that the College is a "State agency" under the Qualifications Based Selection Act, which expressly prohibits a State agency from formally or informally requesting fee information in its initial request for proposals. Plaintiff argues that it is a "political subdivision" under the Local Government Selection Act, which contains no such provision. Defendants reply that, even if the Local Government Selection Act applies, its purpose, like that of the Qualifications Based Selection Act, is to require that the governmental unit or agency select design professionals on the basis of qualifications instead of price. Therefore, defendants urge us to interpret the Local Government Selection Act as containing a similar ban against soliciting fee information.

### 1. Qualifications Based Selection Act

Enacted in 1992, the Qualifications Based Selection Act states:

"It is the policy of State agencies of this State to publicly announce all requirements for architectural, engineering, and land surveying services, to procure these services on the basis of demonstrated competence and qualifications, to negotiate contracts at fair and reasonable prices, and to authorize the Department of

Professional Regulation to enforce the provisions of Section 65 of this Act."  30 ILCS 535/5 (West 2004).

The statute defines "State agency" as "any department, commission, council, board, bureau, committee, institution, agency, university, government corporation, authority, or other establishment or official of this State."  30 ILCS 535/15 (West 2004).

The statute sets forth the following selection procedures.  State agencies may establish procedures to prequalify firms or may use prequalification lists that other agencies have compiled.  30 ILCS 535/20 (West 2004).  When a State agency is considering a project requiring architectural, engineering, or land surveying services, it must provide at least 14 days' notice, published in a professional services bulletin or the official State newspaper. 30 ILCS 535/25 (West 2004).  "[T]aking into account qualifications," an agency must evaluate the firms that have responded to the notice and any prequalified firms.  30 ILCS 535/30 (West 2004).  The agency may consider, but is not limited to considering, "ability of professional personnel, past record and experience, performance data on file, willingness to meet time requirements, location, workload of the firm and any other qualifications based factors as the State agency may determine in writing are applicable." 30 ILCS 535/30 (West 2004).  The statute directs the agency to establish a committee to select firms.  30 ILCS 535/30 (West 2004).

Relying on evaluations, discussions, and any presentations, the State agency must select no less than three firms it deems to be qualified for the project and rank them in order of qualifications.  The agency shall then contact the firm ranked most preferred to negotiate a contract at compensation that the agency determines in writing to be fair and reasonable.  30 ILCS 535/35, 40(a) (West 2004).  If the agency is unable to negotiate a

satisfactory contract with the firm that is most preferred, then it shall terminate negotiations with that firm and begin negotiations with the second most preferred firm on the list. 30 ILCS 535/40(b) (West 2004). The critical prohibition at issue here is that "[i]n no case shall a State agency, prior to selecting a firm for negotiation under Section 40, seek formal or informal submission of verbal or written estimates of costs or proposals in terms of dollars, hours required, percentage of construction cost, or any other measure of compensation." 30 ILCS 535/30 (West 2004). The statute states that "a State agency may comply with federal law and regulations including, but not limited to, Public Law 92--582 (Federal Architect--Engineer Selection Law, Brooks Law, [40 U.S.C. §1101 et seq. (Supp. 20__)]) and take all necessary steps to adapt its rules, specifications, policies, and procedures accordingly to remain eligible for federal aid." 30 ILCS 535/10 (West 2004). The statute prohibits any person, corporation, or partnership licensed as an architect, engineer, or land surveyor from engaging in any conduct that violates any of its provisions. 30 ILCS 535/65 (West 2004).

### 2. Local Government Selection Act

Enacted in 1987, the Local Government Selection Act states that it "shall be the policy of the political subdivisions of the State of Illinois to negotiate and enter into contracts for architectural, engineering and land surveying services on the basis of demonstrated competence and qualifications for the type of services required and at fair and reasonable compensation." 50 ILCS 510/1 (West 2004). The statute defines a "political subdivision" as "any school district and any unit of local government of fewer than 3,000,000 inhabitants, except home rule units." 50 ILCS 510/3(5) (West 2004).

The statute directs political subdivisions to allow firms to file annual statements of qualifications and performance data. 50 ILCS 510/4 (West 2004). When a political subdivision is considering a project, it must either mail notices to firms that have submitted statements of qualifications or place an advertisement in a daily newspaper of general circulation. 50 ILCS 510/4 (West 2004). The political subdivision must then evaluate the interested firms by "taking into account qualifications, ability of professional personnel, past record and experience, performance data on file, willingness to meet time and budget requirements, location, workload of the firm and such other factors as the political subdivision may determine in writing are applicable." 50 ILCS 510/5 (West 2004). The political subdivision must select no less than three firms that it determines to be the most qualified and rank them in order of their qualifications. 50 ILCS 510/6 (West 2004). It shall contact the firm ranked most preferred and attempt to negotiate a contract at compensation that the political subdivision determines in writing to be fair and reasonable. 50 ILCS 510/6, 7(1) (West 2004). If the political subdivision is unable to negotiate a satisfactory contract with the firm that is most preferred, it shall terminate those negotiations and then begin negotiations with the firm that is the next most preferred. 50 ILCS 510/7(2) (West 2004). "[A] political subdivision of the State of Illinois may comply with federal law and regulations and take all necessary steps to adapt its rules, specifications, policies and procedures accordingly to remain eligible for federal aid." 50 ILCS 510/2 (West 2004).

### 3. Illinois Procurement Code

Plaintiff directs us to the Illinois Procurement Code (Procurement Code) (30 ILCS 500/1--1 et seq. (West 2004)), which contains a more detailed definition of "State agency." The policy of the Procurement Code is "that the principles of competitive bidding and

economical procurement practices shall be applicable to all purchases and contracts by or for any State agency." 30 ILCS 500/1--5 (West 2004). The general rule is that all State construction contracts be procured by competitive sealed bidding. 30 ILCS 500/30--15(a) (West 2004). One exception is that all construction-related professional services must be awarded in accordance with the Qualifications Based Selection Act. 30 ILCS 500/30--15(c) (West 2004).

The Procurement Code defines a "State agency" as:

"all boards, commissions, agencies, institutions, authorities, and bodies politic and corporate of the State, created by or in accordance with the constitution or statute, of the executive branch of State government and does include colleges, universities, and institutions under the jurisdiction of the governing boards of the University of Illinois, Southern Illinois University, Illinois State University, Eastern Illinois University, Northern Illinois University, Western Illinois University, Chicago State University, Governor State University, Northeastern Illinois University, and the Board of Higher Education. *** 'State agency' does not include units of local government, school districts, community colleges under the Public Community College Act [(110 ILCS 805/1--1 et seq. (West 2004))], and the Illinois Comprehensive Health Insurance Board." (Emphasis added.) 30 ILCS 500/1--15.100 (West 2004).

### 4. State Agency v. Political Subdivision

Plaintiff urges us to hold that the language in the Procurement Code excluding community colleges from the definition of "State agency" applies as well to the definition of "State agency" under the Qualification Based Selection Act. Essentially, plaintiff is asking

us to construe the two statutory schemes in pari materia. Under this doctrine of construction, two legislative acts that address the same subject are considered with reference to one another, so that they may be given harmonious effect. Land v. Board of Education of the City of Chicago, 202 Ill. 2d 414, 422 (2002). A court invokes this doctrine, however, only to resolve an issue of statutory ambiguity. People v. Aleman, 355 Ill. App. 3d 619, 626 (2005).

Here, there is no ambiguity to resolve. The Qualifications Based Selection Act expressly defines "State agency." The legislature chose to use different language to define the term in the Procurement Code. It is true that the Procurement Code refers to the Qualifications Based Selection Act. Under the guise of statutory construction, however, a court may not supply omissions, remedy defects, annex new provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute. King v. First Capital Financial Services Corp., 215 Ill. 2d 1, 26 (2005). What this means is that we will not simply import language from the Procurement Code and add it to the definition of "State agency" found in the Qualifications Based Selection Act. Instead, we will interpret the language as it appears.

Although we do not simply adopt the language of the Procurement Act, we conclude that the College is not a "State agency" under the Qualifications Based Selection Act but instead is a "political subdivision" subject to the Local Government Selection Act. Our conclusion is based on a review of the Public Community College Act (Community College Act) (110 ILCS 805/1--1 et seq. (West 2004)) and Luciano v. Waubonsee Community College, 245 Ill. App. 3d 1077 (1993).

The Community College Act created the Illinois Community College Board (State Board). 110 ILCS 805/2--1 (West 2004). Any contiguous and compact territory with a population of at least 60,000 may be organized into a community college district. 110 ILCS 805/3--1 (West 2004). A person desiring to organize a community college district must file with the State Board a petition signed by at least 500 voters residing in the territory described in the petition. 110 ILCS 805/3--1 (West 2004). The State Board conducts a hearing on the petition, and, if it grants the petition, then the matter is put to a referendum. 110 ILCS 805/3--3, 3--4 (West 2004). The county or counties in which the proposed district lies bear the cost of the referendum. 110 ILCS 805/3--4.1 (West 2004). If the voters choose to establish a community college district, then an election is held to select the members of the district's board. The board of a community college district is a body politic and corporate. 110 ILCS 805/3--11 (West 2004). The district's revenues are generated by local property taxes. 110 ILCS 805/3--20 through 20.10 (West 2004). A community college district may borrow money for capital improvements, but it must submit the issue to the voters of the district during a regular scheduled election. 110 ILCS 805/3A--1 (West 2004). Each district is empowered to levy taxes to meet debt obligations. 110 ILCS 805/3--33.4 (West 2004).

We find Luciano to be highly instructive regarding plaintiff's status. There, the defendant, an employee of a community college, sought protection under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1--101 et seq. (now 745 ILCS 10/1--101 et seq. (West 2004))). Luciano, 245 Ill. App. 3d at 1079. At the time in question, the Tort Immunity Act defined "Local Public Entity" as "a county, township, municipality, municipal corporation, school

˘15˘

district, school board, forest preserve district, park district, fire protection district, sanitary district, and all other local governmental bodies. *** It does not include the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State." Ill. Rev. Stat. 1987, ch. 85, par. 1--206 (now 745 ILCS 10/1--206 (West 2004)). The court examined the nature of community college districts and held:

"Where a particular entity, such as Waubonsee, must petition another public entity to hold public elections as a necessary antecedent to its creation, requires public elections of its governing board of trustees and is financed by taxes and other public funds, we are inexorably led to the conclusion that Waubonsee was an 'other governmental body' within the definition of local public entity ***." Luciano, 245 Ill. App. 3d at 1083.

The same reasoning leads us to conclude that a community college district is a "unit of local government" and therefore a "political subdivision" subject to the Local Government Selection Act. Where, as here, a governmental body is created by local referendum and funded by local property taxes, and its officials are locally elected, it is a stretch to say that the body is merely an agency, a department, or another arm of the State.

Defendants argue that the definition of "State agency" in the Qualifications Based Selection Act is purposefully broad and stress that the definition contains no exceptions for community colleges or units of local government. Defendants' argument would have some appeal if the Local Government Selection Act did not exist. Because both acts regulate the same subject matter, it would be difficult to see the need for the Local Government Selection Act if the definition of "State agency" were as broad as defendants claim. See Central Illinois Electrical Services, L.L.C. v. Slepian, 358 Ill. App. 3d 545, 549 (2005) (court

should interpret a statute so that no term is rendered superfluous or meaningless). Moreover, courts are to give a statute's words their plain and commonly understood meanings. State Board of Elections v. Shelden, 354 Ill. App. 3d 506, 512 (2004). Adopting defendants' construction would strain the commonly understood meanings of "State agency" and "political subdivision."

   5. Soliciting Fee Information Under the Local Government Selection Act

Defendants argue that, even if the College is a "political subdivision" subject to the Local Government Selection Act, it nevertheless is prohibited from seeking fee information in an initial request for proposals. According to defendants, because the Qualifications Based Selection Act and the Local Government Selection Act have the same purpose, the Local Government Selection Act should be interpreted as prohibiting political subdivisions from soliciting fee information in initial requests for proposals.

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. In re Application of the County Treasurer, 214 Ill. 2d 253, 258 (2005). The best evidence of legislative intent is the language of the statute, and courts must give the language its plain and ordinary meaning. Crusius v. Illinois Gaming Board, 216 Ill. 2d 315, 328 (2005). The simple fact is that, unlike the Qualifications Based Selection Act, the Local Government Selection Act contains no express prohibition against requesting fee information before selecting a firm for negotiation. When the language of a statute is clear and unambiguous, a court must give it effect as written, without reading into it exceptions, limitations, or conditions that the legislature did not express. Land, 202 Ill. 2d at 426.

We are aware that, when the intent of the legislature is clearly expressed and the objects and purposes of a statute are clearly set forth, the courts are not bound by the

literal language of a particular clause of the statute that might defeat such clearly expressed legislative intent. In re Application of the County Treasurer, 214 Ill. 2d at 259. Here, we do not discern any such overriding intent. This is so because the language of each act's section governing the evaluation procedure differs. Both sections contain very similar language about the factors that governmental bodies should consider when selecting firms for negotiation. The Qualifications Based Selection Act lists as one of the factors, "willingness to meet time requirements." 30 ILCS 535/30 (West 2004). After listing the factors, the Qualifications Based Selection Act states that the State agency shall consider "any other qualifications based factors as the State agency may determine in writing are applicable." (Emphasis added.) 30 ILCS 535/30 (West 2004).

The Local Government Selection Act lists as one of the factors for consideration, "willingness to meet time and budget requirements." (Emphasis added.) 50 ILCS 510/5 (West 2004). Thus, the Local Government Selection Act expressly allows a political subdivision to consider budgetary issues before selecting a firm for negotiation. Moreover, the statute does not contain the "qualifications based factors" language found in the Qualifications Based Selection Act. Instead, it states that, after considering the enumerated factors, the political subdivision shall consider "such other factors as the political subdivision may determine in writing are applicable." 50 ILCS 510/5 (West 2004).

These differences in language are significant and warrant a conclusion that, in the Local Government Selection Act, the absence of a prohibition against seeking fee information before selecting a firm for negotiation was not an oversight but likely was intentional. We see no basis for creating such a prohibition through statutory interpretation. If the legislature intended to prohibit the solicitation of cost estimates during the initial stage

of the selection process, it could have amended the Local Government Selection Act at the time that it enacted the Qualifications Based Selection Act.

Defendants and amici do not cite any decision interpreting another jurisdiction's statute governing the procurement of design professionals' services as containing an implied prohibition against seeking fee information before selecting a qualified firm for negotiation. The most persuasive authority apparently available to defendants and amici are opinions of the Attorneys General of Colorado and Montana. These opinions interpreted statutes with language similar to the Local Government Selection Act. Most notably, the statutes did not expressly prohibit a state agency from soliciting cost information before selecting a firm for negotiation. The opinions concluded that a state agency may not request cost information or consider such information before selecting the most highly qualified architect, engineer, or land surveyor for a project. 1992 Colo. Att'y Gen. Op. No. 7; 1992 Mont. Att'y Gen. Op. No. 45. They relied heavily on the legislative history of the Brooks Law and the American Bar Association Model Procurement Code for State and Local Governments (1979) (ABA Model Code).

The Brooks Law contains no prohibition like that found in section 30 of the Qualifications Based Selection Act. See 40 U.S.C. §§1103, 1104 (Supp. 20__). However, the legislative history states that "[u]nder no circumstances should the criteria developed by an agency head relating to the ranking of architects and engineers on the basis of their professional qualifications include or relate to the fee to be paid to the firm, either directly or indirectly." S. Rep. No. 92--1219, 92d Cong., 2d Sess. 8, reprinted in 1972 U.S.C.C.A.N. 4767, 4774. The ABA Model Code is similar to the Local Government Selection Act and likewise contains no express prohibition like that found in section 30 of the Qualifications

Based Selection Act.  The commentary to the ABA Model Code states that "[t]he principal difference between the recommended procedure for architect-engineer and land surveyor selection and the procedures used in most other competitive source selections is the point at which price is considered."  ABA Model Code §5--501, Committee Commentary at 41.

Defendants' and amici's reliance on these sources does not alter our conclusion. Only if a statute is ambiguous may a court consider extrinsic aids for construction, such as legislative history, to determine legislative intent.  In the absence of an ambiguity, the court must rely on the plain and ordinary meaning of the words the legislature chose.  Land, 202 Ill. 2d at 426.  Also, there is nothing in the opinions of the Attorneys General of Colorado and Montana indicating that the relevant statutes presented the language dichotomy that is present in the Qualifications Based Selection Act and the Local Government Selection Act.

We stress that, although a political subdivision is not prohibited from requesting fee information before selecting a firm for negotiation, the selection ultimately must be based on qualifications.  The lack of an express prohibition against considering fee information before selecting the most qualified firms should not detract from the overall purpose and requirements of the Local Government Selection Act.  For example, although the College has requested fee information, its selection criteria are strictly based on qualifications. Although one might wonder why the College has asked for fee information if it is not relevant to the selection of the most qualified firm, it appropriately has refrained from formally injecting any elements of competitive bidding into the selection process.  We simply hold that the College's requests for proposals do not violate the Local Government Selection Act.

We are sympathetic to defendants' and amici's concerns. However, given the language of the relevant statutes, we cannot create a legislative prohibition where none exists. Defendants' and amici's pleas are more appropriately directed toward the legislature.

## IV. CONCLUSION

We hold that (1) the complaint sufficiently alleges plaintiff's standing to seek a declaratory judgment; (2) the College is a "political subdivision" and therefore subject to the Local Government Selection Act; and (3) the Local Government Selection Act does not prohibit the College from soliciting fee or cost information before selecting the most qualified firm for negotiation.

Accordingly, we reverse the judgment of the circuit court of Du Page County and remand the cause.

Reversed and remanded.

BYRNE and KAPALA, JJ., concur.